# LOTH v. COLUMBIA THEATRE COMPANY AND CITY OF ST. LOUIS, Appellants.

**Division Two, June 19, 1906.**

1. **STREETS: Delegated Use: Advertisements.** Express power in a city under its charter to regulate the use of its streets does not mean that it has power to grant the use of its streets for private purposes or to permit the erection of permanent advertisements therein; it has no power to grant to any one or any company the right to use the whole or any part of any public street in such a manner as to unreasonably interfere with its public use, or to render it unsafe or dangerous when used by the public.

2. ———: ———: ———: **Illuminating Sign.** To the sides of the balcony of a theatre building which abutted on a street, the theatre company had attached an illuminating sign, across the sidewalk, five feet ten inches wide, weighing from 200 to 350 pounds, according to the number of electric bulbs arranged in the form of letters placed thereon. The bulbs were changed every Sunday morning, and the balcony was fourteen feet high, and the sign was used as an advertisement of the theatre's attractions. *Held*, that the sign, if out of repair or insecurely fastened or liable to fall, was not the less dangerous to pedestrians on the sidewalk because suspended above, instead of resting upon and obstructing, the sidewalk, but was more dangerous.

3. ———: ———: ———: ———: **Ordinance: Evidence.** The right to maintain an illuminating sign in front of a theatre, not contemplated by ordinance, either because it exceeds the size specified in the ordinance, or because the ordinance does not affirmatively grant any such right, but simply prohibits signs of a certain size, is not affected in any wise by the ordinance, and such ordinance should not be admitted in evidence in a suit for damages by a pedestrian injured by the falling of the sign.

4. ———: **Advertising Sign: Nuisance Per Se: Easement Right.** An illuminating advertising sign, suspended high over the sidewalk, in such a way as not to interfere with the free use of the highway, perfectly safe in its structure and securely fastened, in the absence of a prohibitive ordinance, is not necessarily a nuisance *per se*. But such a sign, when of large size, is dangerous to pedestrians, while being lowered or replaced. Hence,

Loth v. Columbia Theatre Co.

it cannot be held as a matter of law, on the theory that the abutting owner, who owns the fee, and, in the absence of a prohibitive ordinance, at common law has the right to make every reasonable use of the sidewalk not inconsistent with the public easement, that the public's right of passage was not impeded or interrupted by the maintenance of the sign.

5. ———: ———: Replacing Light: Independent Contractor. The theatre company contracted with a light company to change the electric bulbs of an illuminating sign, suspended in front of its building. To do this the sign had to be lowered, and as this was being done the sign fell and injured a pedestrian, who sues the theatre company for damages. The changing of the bulbs, which were used to spell out the advertisements, and the necessary lowering of the sign, which was of itself dangerous, was done by the direction of the theatre company and for its exclusive benefit. *Held*, that the theatre company is not relieved of liability on the theory that the work was done through an independent contractor.

6. NEGLIGENCE: Independent Contractor: Acts Called for by Contract. Where the injury to a pedestrian results directly from the acts called for and made necessary by the contract, namely the lowering, changing the electric bulb lettering, and the replacing of an illuminating sign to a theatre, and not from acts which are merely collateral to the contract, the negligence of the men handling the sign, though they are under the employment and control of an independent contractor contracted with to do the work, is the negligence of the theatre company for which the work was being done, and it is liable for the injuries to the pedestrian just as if it directly did the negligent acts itself.

7. ———: Admission: Instructions and Allegations of Negligence: Nuisance. Where an illuminating sign which fell upon a pedestrian as it was being lowered, was a nuisance *per se*, instructions for him are not erroneous because they fail to submit the question of negligence in taking down the sign, negligence on the part of the contractor who did the work being asserted in the answer. But instructions upon that theory are not applicable where the sign was not a nuisance *per se*. The sign while safely and securely attached to the balcony was not a nuisance, and became dangerous only when being lowered and replaced negligently. *Held*, that where the answer of the company to whose building the sign was attached asserted that the injury to the pedestrian was occasioned through the employees of the contractor who had the work in hand, and thereby admitted its own negligence, the instruction should have submitted a case of negligence to the jury, and not one of nuisance.

8. **ILLUMINATING SIGN: Unlawful.** An illuminating sign suspended to the balcony of a theatre building for advertisement purposes, high over a sidewalk, dangerous only when being lowered or replaced, is not unlawful, in the absence of a prohibitive ordinance.

9. ————: **Liability of City: Failure to Enforce Ordinance.** A city cannot be held liable in damages to a pedestrian, injured on a sidewalk, for failure to enforce one of its ordinances in reference to the suspension of illuminating signs in front of theatre buildings.

10. ————: ————: **Damages for Injuries.** A city cannot be held in damages by a pedestrian for injuries received from a falling advertising sign, when the petition does not allege, nor the evidence tend to show, any connection between his injury and the sign while suspended, nor until it was being lowered by a private workman, for whose negligence the city was in no wise responsible.

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough,* Judge.

Reversed and remanded as to appellant Columbia Theatre Company; reversed as to appellant City of St. Louis.

*Robert L. McLaran* for appellant Columbia Theatre Company.

(1) The ordinance pleaded and offered in evidence by this defendant should have been admitted. It is a valid ordinance of the city of St. Louis and its reasonableness is not subject to judicial review. Sec. 26, amended charter St. Louis; St. Louis v. Tel. Co., 149 U. S. 470; Barber Asphalt Paving Co. v. French, 158 Mo. 534, aff. 181 U. S. 324; St. Charles v. Elsner, 155 Mo. 671; Skinker v. Heman, 148 Mo. 350; Morse v. Westport, 136 Mo. 286; Kerney v. Barber Asphalt Paving Co., 86 Mo. App. 573; Kansas City v. Trieb, 76 Mo. App. 478; Hoey v. Gilroy, 129 N. Y. 132. (2) Evidence of a general and well-established usage was competent: (a) To aid in the interpretation of said ordinance.

Estes v. Shoe Co., 155 Mo. 577; State ex rel v. Field, 112 Mo. 554; Baer v. Glaser, 90 Mo. App. 289; Bank v. Hayward, 62 Mo. App. 550; Cole v. Skrainka, 37 Mo. App. 427; Sutherland on Statutory Construction, secs. 308-309; Sedgwick on Construction of Statutory and Constitutional Law, 215; Bank v. Mersereau, 3 Barb. Ch. 577; Smith on Modern Law of Municipal Corporations, sec. 540. (b) To prove that the sign was not unlawful under the general principles of the common law. 2 Dillon, Mun. Corp., sec. 734; Hisey v. City of Mexico, 61 Mo. App. 248; O'Linda v. Lathrop, 21 Pick. 292; McCormick v. Commissioners, 150 Ill. 529. (3) The sign was not unlawful under the general principles of the common law, and the fact that it was being hung by an independent contractor was, therefore, a valid defense. Carvin v. St. Louis, 151 Mo. 334; Wiese v. Remme, 140 Mo. 289; City of Independence v. Slack, 134 Mo. 66; Benjamin v. Railroad, 133 Mo. 274; Crenshaw v. Ullman, 113 Mo. 638; Long v. Moon, 107 Mo. 384; Fink v. Furnace Co., 82 Mo. 276; Jegglin v. Roeder, 79 Mo. App. 428; Hisey v. City of Mexico, 61 Mo. App. 248; Kirkpatrick v. Knapp, 28 Mo. App. 427; Schweickhardt v. St. Louis, 2 Mo. App. 571; Leary v. City of Yonkers, 88 N. Y. S. 829; Hoey v. Gilroy, 129 N. Y. 132; Maher v. Steur, 170 Mass. 454; Salisbury v. Herchenroder, 106 Mass. 458; Jones v. Boston, 104 Mass. 75; O'Linda v. Lathrop, 21 Pick. 292; McCormick v. Commissioners, 150 Ill. 529; Railroad v. Hopkins, 54 Ark. 213; Hawkins v. Sanders, 45 Mich. 491; Tarry v. Ashton, 1 Q. B. D. 314; Engle v. Eureka Club, 137 N. Y. 100.

*Charles W. Bates* and *Benjamin H. Charles* for appellant City of St. Louis.

(1) A municipal corporation is not liable for failure to enforce its ordinances or police regulations. Moran v. Pullman, 134 Mo. 651; Harman v. St. Louis, 137 Mo. 500; Butz v. Cavanaugh, 137 Mo. 510; Dillon on

Municipal Corporations (4 Ed.), sec. 950; Kiley v. Kansas City, 87 Mo. 108. (a) As against the city the petition rests solely on an alleged failure to enforce an ordinance which was not even introduced in evidence. (b) To sustain plaintiff's case would be to put a premium upon the city's failure to pass proper regulations in cases where they are needed. (c) And would convert the city into an insurance company whenever it might pass such regulating ordinances. Harman v. St. Louis, 137 Mo. 500. (d) Enforcement of such ordinances is a public function, failure to enforce which entails no liability upon a city any more than upon the State or upon a county. Kiley v. Kansas City, 87 Mo. 108; Hewison v. New Haven, 37 Conn. 484. (2) It is settled doctrine, both at common law and in this State, that the owner of premises abutting on a public street is presumptively the owner of the fee to the center thereof, subject to the public easement. Thomas v. Hunt, 134 Mo. 399; Union Elevator Co. v. Railroad, 135 Mo. 366. (a) The street is his property subject to the easement of the public. Neill v. Trust Co., 89 Mo. App. 646; Walker v. Sedalia, 74 Mo. App. 75; Gamble v. Pettijohn, 116 Mo. 375, citing Bishop on Non-Contract Law, sec. 990; Thompson on Negligence, p. 345, sec. 7; Kirkpatrick v. Knapp, 28 Mo. App. 431. (b) The occupant of such abutting property has therefore a lawful right to use the space along or under or above the sidewalk for any reasonable lawful purpose, subject to the public easement of passage, subject to the right of the city to build sewers, lay conduits or string wires, etc., and subject to proper police regulations or prohibition, and may make any beneficial use of the street which is consistent with public rights. Fehlhauer v. St. Louis, 178 Mo. 647. (c) Because of the very fact that his property does abut on the street he has certain rights in the street, whether he owns the fee or not. Fehlhauer v. St. Louis, 178 Mo. 647; DeGeofrey v. Railroad, 179 Mo. 714. (d) His ownership of shade trees

in the street will be protected. Walker v. Sedalia, 74 Mo. App. 70; McAntire v. Tel. Co., 75 Mo. App. 535. (e) In the grass upon its surface and the minerals beneath. Gamble v. Pettijohn, 116 Mo. 378; Bishop on Non-Contract Law, sec. 990. (f) In a wooden awning or portico in front of his hotel and extending across the sidewalk. Hisey v. Mexico, 61 Mo. App. 248; Hawkins v. Sanders, 45 Mich. 491. (g) In scales. Coal Co. v. Scruggs, 62 Mo. App. 93. (h) And he may temporarily obstruct the street and even the public easement of passage, by the deposit of his wares, or his building materials. Westliche-Post v. Allen, 26 Mo. App. 181; Pueschell v. Wire Works, 79 Mo. App. 459. (i) He may construct permanent vaults and cellars under the sidewalk. Fehlhauer v. St. Louis, 178 Mo. 635. (j) Or signs above it. Hoey v. Gilroy, 129 N. Y. 132; Hewison v. New Haven, 37 Conn. 475. (k) Or a permanent ladder. Hexamer v. Webb, 101 N. Y. 377; Cushing v. Boston, 128 Mass. 330. (l) Or even a staircase. Everett v. Marquette, 53 Mich. 450. (m) Or any projections which are too high to interfere with the passage of the public. Goldstraw v. Duckworth, L. R. 5 Q. B. Div. 275; State v. Higgs (N. C.), 48 L. R. A. 450. (3) The sign when securely attached to the balcony, as the evidence shows it was, was not a nuisance *per se*. Hisey v. Mexico, 61 Mo. App. 248; Hawkins v. Sanders, 45 Mich. 491; Everett v. Marquette, 53 Mich. 450; Goldstraw v. Duckworth, L. R. 5 Q. B. Div. 275; State v. Higgs (N. C.), 48 L. R. A. 446. (a) Even an obstruction which actually encroaches upon the public's easement of passage, such as a cellar door, is not an unlawful thing, when in good repair, nor a nuisance *per se*. Fehlhauer v. St. Louis, 178 Mo. 648. (b) The city could not have declared the sign to be a nusiance, unless it was so in fact. Hisey v. Mexico, 61 Mo. App. 248; St. Louis v. Heitzeberg, 141 Mo. 375. (c) To treat the sign as a nuisance *per se* is to make the city an insurer of its safe condition, which

is not the rule even as to the owner of the abutting property. Kirkpatrick v. Knapp, 28 Mo. App. 431; Buckley v. Kansas City, 156 Mo. 25; Carvin v. St. Louis, 151 Mo. 334; Baustian v. Young, 152 Mo. 317; Fehlhauer v. St. Louis, 178 Mo. 652. (4) Mere knowledge of officers of the city that the sign had been attached to the balcony, or even that it was from time to time taken down, did not constitute notice of anything unlawful or of negligence in the act of taking it down. (a) The petition alleged no negligence on the part of the city. (b) The city had no notice whatever that the workmen engaged in the work of removing the sign were guilty of any negligence therein. (5) The plaintiff has joined in his petition two inconsistent and irreconcilable cases. (a) His action against the city is based on the alleged illegality of the sign when in place on the balcony and securely attached to it; that is to say, upon a nuisance *per se* without regard to whether there is any causal connection between a sign securely hanging fifteen feet above the sidewalk and the injuries occasioned by it when, by reason of human intervention in removing it, it falls and injuries the plaintiff. (b) The case as against the Columbia Theatre Company rests upon the intervening work of human beings, and their alleged negligence in removing the sign and permitting it to escape from their control, which negligence had absolutely nothing to do with the question of a nuisance *per se* in the overhanging sign securely attached to the building. (6) Likewise in his proof, the plaintiff established no causal connection between his injury and the sign when securely attached to the portico (as the evidence shows it always was.) On the contrary, in his effort to establish his case against the other defendant, he is compelled to show that his injury was due to the negligence of the workmen in handling the sign, an entirely different thing. And therefore the sign itself (when attached to the balcony) was not the proximate cause of his injury.

*Chester H. Krum* and *David Goldsmith* for respondent.

(1) The suspension of the sign in question was an illegal encroachment upon the highway. Corby v. Railroad, 150 Mo. 469; State ex rel. v. St. Louis, 161 Mo. 371; Elliott on Roads and Streets (2 Ed.), sec. 645; Salisbury v. Herchenroder, 106 Mass. 458; Wilkes-Barre v. Burgunder, 7 Kulp 63; Grove v. Ft. Wayne, 45 Ind. 429; Garland v. Towne, 55 N. H. 55; Wells v. Brooklyn, 41 N. Y. Supp. 143; Norristown v. Moyer, 67 Pa. St. 356; Jones v. Railroad, 107 Mass, 261; 27 Am. and Eng. Enc. of Law (2 Ed.), 156, 157; 2 Dillon on Municipal Corporations (4 Ed.), sec. 660; 1 Wood on Nuisances (3 Ed.), sec. 250. (2) The position of the city of St. Louis, that the suspension of the sign, and the weekly lowering and raising of the same, were not the proximate cause of the injury sued for, is not well taken. Salisbury v. Herchenroder, 106 Mass. 456; Cohen v. Mayor of New York, 113 N. Y. 532. (3) The exclusion of the city ordinance offered by the defendant was proper. Dillon on Municipal Corporations (4 Ed.), sec. 660, pp. 783, 784; Young v. Rothrock, 121 Iowa 588; People v. Harris, 203 Ill. 272; Tilly v. Mitchell, 121 Wis. 1; City of Richmond v. Smith, 101 Va. 161; Bank v. Tyson, 133 Ala. 459. (4) The claim of the Theatre Company that it is not liable for the injury sued for because the injury was caused by the negligence of an independent contractor, is without foundation. Dreford v. State to Use, 30 Md. 179; Ellis v. Sheffield Gas Consumers, 2 El. & Bl. 767; James v. McMinimy, 11 Bush 471; Wilkinson v. Steel, etc., Works, 73 Mich. 415; Hughes v. Railroad, 39 Ohio St. 461; 16 Am. and Eng. Ency. Law (2 Ed), 197; Spencer v. Schultz, 103 Cal. 208. The Theatre Company ordered suspension of the sign and its weekly change. If it had the right so to do, the exercise of that right, nevertheless, imposed upon it certain obligations to the public;

and those obligations it could not escape by employing some one else to perform them. The law is entirely clear that, when the doing of a thing imposes or carries with it an obligation to another, the employment of an independent contractor for the doing of it does not absolve the person engaging the contractor from the attendant obligation. Dillon v. Hunt, 105 Mo. 154, 11 Mo. App. 246; Tarry v. Ashton, L. R. 1 Q. B. Div. 314; Bower v. Peate, L. R. 1 Q. B. Div. 321; Pickard v. Smith, 10 C. B. (N. S.) 470; Robbins v. Chicago, 4 Wall. (71 U. S.) 679; Gorham v. Gross, 125 Mass. 232; Covington, etc., Co. v. Steinbock, 61 Oh. St. 215; Deming v. Railroad, 169 N. Y. 1; 16 Am. and Eng. Ency. Law (2 Ed.), 196.

BURGESS, P. J.—This is an action for twenty-five thousand dollars damages for personal injurries alleged to have been sustained by plaintiff on October 22, 1899, by reason of the alleged negligence of workmen of the Chase Electric Sign Company in permitting an illuminated sign which they were lowering from a balcony to fall upon plaintiff. The plaintiff recovered a verdict and judgment against the defendants for the sum of $15,000. In due time the defendants filed separate motions for new trial and in arrest, which were overruled, and they bring the case to this court by appeal for review.

From the record the following facts appear:

At the time of the accident, and for some time prior thereto, the Columbia Theatre Company occupied a building fronting on the west side of Sixth street in the city of St. Louis, which building the company used for a theatre. Attached to this building and extending over the width of the sidewalk was a balcony supported by pillars at the outer edge of the sidewalk. This balcony was about fourteen feet high, its sides facing north and south. Along each of these sides the defendant company suspended a large sign, from twelve to

fourteen feet long and five feet ten inches wide, and weighing from two hundred to three hundred and fifty pounds, according to the number of letters placed thereon. The sign by the fall of which plaintiff was injured was put up and used for an advertisement of attractions at the theatre, such attractions being named and described by electric bulbs arranged in the form of letters on the sign. These letters were changed every Sunday morning, between eight and eleven o'clock, to correspond with the change in the attractions. In order to change the letters it was necessary to remove the sign from its fastenings and lower it, and after the change was made it was raised and again suspended from the balcony.

On Sunday morning, October 22, 1899, the plaintiff was walking north on the west side of Sixth street and passed under the balcony, at which time workmen were engaged in lowering the sign on the north side of the balcony, when the sign fell upon and struck the plaintiff, shattering one of his legs. These facts are substantially alleged in the petition, and the petition further alleges that the sign was "at all times a menace and source of danger to persons passing underneath it on said sidewalk."

By the petition as originally drawn, one Meyers, the owner of the theatre building, was made a party defendant, but at the trial the plaintiff dismissed as to him, and struck out all allegations with reference to him in the petition.

The defenses of the theatre company were a general denial, a plea of contributory negligence by plaintiff, and a plea to the effect that the work was being performed by an independent contractor; also a plea setting up section 1157 of the Municipal Code of the city of St. Louis. The defenses of the city were a general denial and a plea of contributory negligence.

The cause was tried on the theory that the facts

197 Sup.—22

above set forth made the sign an illegal encroachment upon the sidewalk, and a nuisance; that the theatre company was liable for the injury caused by the fall of the sign because it had created this encroachment or nuisance, and that the city of St. Louis was liable for the injury, because it had tolerated the encroachment or nuisance.

The theatre company contests the claim that the sign which caused the injury was originally a nuisance, or that it became such by reason of its use and the weekly changes made in it.

The claim of the plaintiff for a recovery against the city of St. Louis was based upon its toleration of the alleged illegal encroachment on the sidewalk by reason of the suspension and weekly changes of the sign. The evidence tended to show knowledge on the part of the city both of the suspension and weekly change of the sign.

Officer Schlostein of the St. Louis police force testified that he noticed the signs on the north and south sides of the balcony; that they were changed every Sunday morning between 8 and 11 o'clock, and that he witnessed one of the weekly changes of these signs about two weeks prior to the injury.

David Covington, another member of the city police force, testified that he noticed these signs suspended along the sides of the balcony; that he knew they were changed every week, and saw the signs lit up every evening; that he witnessed the hanging of the sign by which plaintiff was injured; that he watched the parties hoisting the sign up for a few minutes, and when they got it nearly into position he passed on, turning the corner and going east; that at one time he "beckoned to some ladies and children that happened to stop there, and hollowed to them and said, 'You had better move on, that is no safe place for you;' " that after he had turned the corner and walked east towards Broadway he heard a commotion, and then went back to the

theatre building and found that the plaintiff had been injured.

The defendants sought to establish the legality of the sign by offering in evidence an ordinance of the city of St. Louis, which ordinance the court refused to admit.

There was evidence upon the part of the theatre company tending to show that the sign by which the plaintiff was injured was its sign; that the suspension of and weekly changes in said sign were by its direction, under a contract made by it with a corporation known as the Chase Electric Sign Company, and that said sign company was an independent contractor. Defendant company also offered evidence tending to show that the suspension of signs, lamps and other things over the sidewalks in front of theatres and hotels was a custom long established in the city of St. Louis, which evidence was excluded by the court.

At the close of all the evidence the defendants asked the court to give a peremptory instruction to the jury to find for defendants, which was refused, and defendants excepted. The court then at the instance of plaintiff, and over the objection and exception of defendants, instructed the jury as follows:

"1. If the jury believe from the evidence that on or about October 22, 1899, a sign of the character mentioned in the evidence was being suspended from or affixed to the north side of the balcony of the Columbia Theatre Company, which is mentioned in the evidence, and over and above the sidewalk of Sixth street in this city; that said sign was so being suspended or affixed under contract therefor made by the Columbia Theatre Company; that the plaintiff was at said time passing over said sidewalk, and that, as he did so, said sign fell and struck and injured him, and that the plaintiff was not guilty of negligence directly contributing to such injury; then the jury will find for the plaintiff as

against the Columbia Theatre Company. And if the jury find the facts to be as aforesaid from the evidence, and further find from the evidence that, when said sign was being suspended or affixed as aforesaid, the city of St. Louis knew of such suspension or affixing of said sign, then the jury will furthermore find for the plaintiff as against the city of St. Louis.

"2. The jury are instructed that the police force of the city of St. Louis constitute a department of the city government. And if the jury believe from the evidence that, at the time of the injury of the plaintiff herein sued for, a sign of the character mentioned in the evidence was in process of being suspended from or affixed to the north side of the balcony mentioned in the evidence; that for a number of weeks prior to the date of said injury signs of like character were each week suspended from or affixed to the north and south side of said balcony; and that any of said matters became known to any policeman of said city in the course of the discharge of his official duty, then such knowledge on the part of such policeman constituted knowledge on the part of said city within the meaning and for the purpose of the other instructions given by the court to the jury.

"4. The court instructs the jury that the attempted hanging of the sign as described by the witnesses was an unlawful use of the sidewalk by the Columbia Theatre Company and the said company is liable to the plaintiff for all injuries resulting to the plaintiff from the fall of the sign during the progress of the attempted hanging as described by the witnesses, unless the jury finds that the plaintiff was guilty of negligence directly contributory to the injury.

"The court further instructs the jury that the fact that the sign was being hung for the Columbia Theatre Company under a contract between said company and

some independent contractor cannot excuse the defendant company.

"7. If the jury find for the plaintiff, then they will assess his damages at such sum, not exceeding twenty-five thousand dollars, as they may believe from the evidence will reasonably compensate him for any pain of body or mind that he has suffered, or will hereafter suffer, by reason of said injury, if they find such injury to be permanent, for any loss of earnings he has suffered, or will hereafter suffer, by reason of said injury if they find the same to be permanent, and for expense, if there were any, necessarily incurred by him for surgicial and medical attention and medicines on account of and in consequence of said injury, the amount included for such expenses, if any, not to exceed the reasonable value of such surgical and medical attention and medicines."

The court, of its own motion, over the objection and exception of defendants further instructed the jury as follows:

"3.  The jury are instructed, as a matter of law, that any person traveling upon the sidewalk of a city, which is in constant use by the public, has a right, when using the same with due diligence and care, to presume and to act upon the presumption, in the absence of knowledge to the contrary, that it is reasonably safe for ordinary travel throughout its entire width.

"8.  The court instructs the jury that nine of your number have the power to find and return a verdict, and if less than the whole of your number, but as many as nine, agree upon a verdict, the same should be returned as the verdict of the jury, in which event all the jurors who concur in such verdict shall sign the same.

"If, however, all of the jurors, concur in a verdict, your foreman alone may sign it."

The court, at the request of defendants, instructed the jury as follows:

"5. The court instructs the jury that if the plaintiff himself was guilty of any carelessness or negligence that directly contributed to any injury which you may believe from the evidence was received by plaintiff by reason of being struck by a sign while on the west side of Sixth near St. Charles street, then the verdict must be for the defendants.

"And for the purpose of determining whether the plaintiff was guilty of such negligence and carelessness you may take into consideration all the circumstances of the case.

"By the carelessness and negligence on the part of the plaintiff referred to is meant the absence of ordinary care on his part, or such care as an ordinarily careful or prudent person would have exercised under the same or similar conditions.

"And the jury are further instructed that the burden of proving such want of care is upon the defendants.

"6. By the term 'negligence' as used in these instructions is meant the want of ordinary care, and by the term 'ordinary care' is meant such care as a prudent person ordinarily uses under the same or similar conditions."

Defendant Columbia Theatre Company requested the court to give the following instructions, all of which the court refused to give, defendant duly excepting:

"A. The court instructs the jury that under the pleadings and all the evidence in the case, the plaintiff cannot recover against the defendant, the Columbia Theatre Co.

"B. The court instructs the jury that under the pleadings and the evidence plaintiff cannot recover against the Columbia Theatre Company, and you will find in favor of said Columbia Theatre Company.

"C. The court instructs the jury that if they find from the evidence that the sign mentioned in the petition, when put in place in the manner described in the

evidence, did not interfere with the free use of the street by the public nor unreasonably the view along the same, and was not when placed a danger or menace to the passersby, and was not prohibited by any ordinance of the city of St. Louis in force at the time of the accident, and further find that the accident described in the petition resulted from the carelessness or negligence of the Chase Electric Sign Company or its agents and sub-contractors while placing said sign in position, and that the said Chase Electric Sign Company had full and exclusive charge and control by contract, of the raising and lowering of said sign, as an independent contractor, and that said Chase Electric Sign Company and its sub-contractors were skilled in the raising and lowering of signs, then the Columbia Theatre Company, is not responsible for the accident, and the jury will so find.

"D. The court instructs the jury that the ordinances of the city of St. Louis, read in evidence by defendants, to-wit, section 1069 of article 5 and chapter 12, and section 1157 of article 9 of chapter 12 of the Municipal Code of the city of St. Louis, are valid and were in force at the time of the injury complained of, and that under and by virtue of said ordinances, the defendant, Columbia Theatre Company, had a right to erect and maintain a balcony in front of its theatre building, provided the same was constructed with iron columns and on a plan approved by the Board of Public Improvements of the city of St. Louis, and that it had a right to maintain an illuminated sign attached to said balcony, and extending more than eighteen inches from the building line, provided the same was at least twelve feet above the sidewalk, and if they find from the evidence that the balcony in front of the Columbia Theatre building was constructed with iron columns and on a plan approved by the Board of Public Improvements of the city of St. Louis, and that the sign in question was at least twelve feet above the sidewalk,

and was safely fastened or attached to said balcony, and that its removal had not been ordered by the Street Commissioner of the city of St. Louis, and that said sign fell upon plaintiff, causing the injury complained of, while it was being lowered or raised by the Chase Electric Sign Company, and that said Chase Electric Sign Company was an independent contractor as defined in instruction C, then you will find for defendant, Columbia Theatre Company.

"E.    The court instructs the jury that although they may believe from the evidence that defendant, Columbia Theatre Company, was the lessee of the building where the injury in question occurred, and that in front of said building was a balcony to which was fastened or attached an illuminated sign that was used by said Columbia Theatre Company in its business of conducting a theatre, and that said sign was negligently allowed to fall upon plaintiff, causing the injury complained of, while he was exercising ordinary care, yet if they further believe from the evidence, that before the time of the injury, the defendant, the Columbia Theatre Company, had entered into a contract with Chase Electric Sign Company, by which the latter agreed, among other things, to change the lettering on said sign with the changes in the exhibitions given by defendant, Columbia Theatre Company, in the building leased by it, and for that purpose to raise and lower the same, and that the said Chase Electric Sign Company, its agents and employees were skillful, reliable and competent to do said raising and lowering, and that at the time of the injury complained of said Chase Electric Sign Company, its agents, servants or employees, were in exclusive possession and control of said sign, pursuant to the terms of said contract, for the purpose of raising and lowering the same for relettering, and were not subject to control or direction of defendant, Columbia Theatre Company, as to the manner of doing said work, and that the acts charged as

the cause of the injury were the acts of the said Chase Electric Sign Company, its agents, servants or employees, and if they further believe, from the evidence, that said work of raising and lowering said sign was not dangerous in itself, then the Columbia Theatre Company would not be liable to plaintiff for the injury suffered, and your verdict should be in favor of said Columbia Theatre Company.''

Defendant city of St. Louis requested the court to give the following instructions, all of which the court refused to give, said defendant duly excepting:

"I. The court instructs the jury that upon the pleadings and the evidence adduced the plaintiff is not entitled to recover against defendant, the city of St. Louis.

''II. If the jury believe and find from the evidence that the injuries sustained by plaintiff were caused by accident, mischance or misadventure, and without the negligence of either the plaintiff or the defendant, the city of St. Louis, the plaintiff is not entitled to recover and their verdict must be for the defendant, the city of St. Louis.

''III. The jury are instructed that their verdict should be for the defendant, the city of St. Louis, unless they find from the evidence:

''1. That on or about the 22nd of October, 1899, there was over and across the western sidewalk of Sixth street, attached to the balcony of the building of the Columbia Theatre Company, on the southwest corner of Sixth and St. Charles streets, a sign, and that said sign was so insecurely attached to said balcony as to be dangerous to persons passing underneath it on said sidewalk while using ordinary care.

''2. That said dangerous condition of said sign, if you find it was in such condition, was known to the defendant, the city of St. Louis, or had existed for such a length of time that said defendant could by the exer-

cise of ordinary care have known of such dangerous condition in time to have remedied the same before the plaintiff was injured.

"3.   That on said 22nd day of October, 1899, while plaintiff was passing along said Sixth street exercising ordinary care, said sign fell and struck plaintiff and injured him; and that said sign fell by reason of being insecurely fastened, as above defined, and not by reason of the acts of the Columbia Theatre Company or The Chase Electric Company or Henry Shurk or said Shurk's employees.

"IV.   The court instructs the jury at the close of the entire case that upon the pleadings and the evidence adduced the plaintiff is not entitled to recover and their verdict should be for the defendant, the city of St. Louis.

"V.   The court instructs the jury that the city of St. Louis cannot be held liable to plaintiff on account of not enforcing its ordinance.

"VI.   The jury are instructed that the city is not liable in this case if the jury believe from the evidence that the plaintiff was injured solely by reason of the sign mentioned in the evidence being raised and lowered, or caused to be raised or lowered, by the Chase Electric Sign Company.

"VII.   If the jury find from the evidence that the sign in question was securely fastened and would not have fallen if it had not been raised or lowered at the time of the accident to the plaintiff, then your verdict should be for defendant, the city of St. Louis."

It is claimed for the defendants that the trial court erred in holding that the suspension of the sign was an illegal encroachment on the sidewalk.   There is a difference, however, between the positions taken by the defendants upon this question.   The theatre company practically concedes its liability for plaintiff's injury if the suspension of the sign was wrongful, but the

city does not.   Upon the contrary, it denies its liability for the injury upon the pleadings and the facts disclosed by the record, and contends that even if the sign was wrongfully in the street, it was not a party to and had no connection with the wrong.

That the city of St. Louis has, under its amended charter, express power to regulate the use of its streets must be admitted, but this does not mean that it has power to grant the use of its streets for private purposes or to permit the erection of permanent advertising signs thereon.   In other words, the city has no power, under its charter, to grant to any one the right to use the whole or any part of one of its public streets in such a manner as to unreasonably interfere with its public use, or render it unsafe and dangerous to such use.   In the case of State ex rel. v. St. Louis, 161 Mo. 371, the question of the right of the relator to use the street for advertising purposes was passed upon, and the right denied.   The court, speaking through GANTT, J., said: "But there is another view to be taken of this ordinance.   It subjects the streets to a purely private purpose, to-wit, the advertising of individual business and enterprises.   Can the city devote its streets to such a purpose?   We hold that it cannot."   In the case in hand the street was being used for advertising purposes of a purely private character, and the sign if out of repair, or insecurely fastened and liable to fall, was none the less dangerous because suspended above, instead of resting upon and obstructing, the sidewalk.   In Corby v. Railroad, 150 Mo. 457, MARSHALL, J., speaking for the court, said: "The sum of it all is that the public cannot grant to any one exclusive rights in a public highway, nor can it authorize any one to use the whole or any part thereof in such a manner as to unreasonably interfere with its use by the other members of the public or with the right of access of the abutting owners to their property. Neither can any abutting owner use any part of the highway in such a manner as to per-

manently or for an unreasonable length of time obstruct or impede the use of the highway by the public. Storing merchandise on a sidewalk, or placing them there for any length of time for advertising purposes; placing finished products of a factory on the highway and leaving them there for an unreasonable length of time, awaiting shipment or for any other purpose; erecting permanent advertising signs on or over any part of the highway; standing hauling or delivery wagons on the highway in front of a place of business for a longer time than is reasonably necessary to load and unload them; these and many other acts that might be mentioned are unlawful, and constitute nuisances whether authorized by the public authorities or not.''

A sign of the weight and dimensions of that which fell upon plaintiff suspended over the highway, if permitted to become out of repair or its fastenings become insecure, is more dangerous to persons using the highway than an obstruction upon its surface, because not so likely to be observed and avoided. Persons moving along on a sidewalk rarely look up to see if the way overhead is clear of danger, while they generally do look for obstructions on the surface.

In Elliott on Streets and Roads (2 Ed.), sec. 645, it is said: '' 'Public highways belong, from side to side and end to end to the public,' and any permanent structure or purpresture which materially encroaches upon a public street and impedes travel is a nuisance *per se.* . . . This is the only safe rule, for, if one person can permanently use a highway for his own private purposes, so may all, and if it were left to a jury to determine in every case how far such an obstruction might encroach upon the way without being a nuisance, there would be no certainty in the law.''

"It is not necessary, in order to constitute a nuisance, that there should be an actual physical obstruction to the public use upon the surface of the highway, for its use may be rendered as dangerous by objects

above the way as by obstructions upon the surface.
. . . An obstruction may be a nuisance although it
is not of a permanent character. Any unauthorized use
of a highway, so extensive or so long continued as to
be unreasonable, may amount to a nuisance.'' [Ibid,
secs. 647, 648.]

"An act may also be a nuisance because it inter-
feres with public travel, although it does not of itself
constitute an obstruction in a highway.'' [Ibid, sec.
649.]

"Cities must exercise reasonable care to keep
their streets reasonably safe from falling substances,
as well as from defects in the road-bed.'' [Ibid, sec.
620.]

In Salisbury v. Herchenroder, 106 Mass. 458,
plaintiff sued for damages to his property occasioned
by the fall of a sign placed over a street by defendant,
and though the fall was caused by an extraordinary
wind, and without negligence in the way the sign was
suspended, the defendant was held liable. It is true
that the suspension of the sign was in violation of an
ordinance of the municipality; but in Wood on Nui-
sances (3 Ed.), vol. 1, pp. 350, 351, in a note with ref-
erence to that case, it is said: "Suppose there had
been no ordinance, would not his liability have been
the same? His suspension of the sign over a public
street, whereby the safety of persons in the street was
endangered, was a public nuisance which the city could
not license, and for which the defendant was subject to
indictment at common law.''

In Grove v. City of Fort Wayne, 45 Ind. 429, the
plaintiff was injured by a brick that fell from a cor-
nice, which was in the course of construction, and
which overhung the sidewalk to the extent of one foot,
and was alleged to be of a dangerous character and lia-
ble at any time to fall and injure persons passing be-
neath. The court held, on demurrer, that a good cause
of action was stated against the city, saying: "Ob-

structions entirely above ground may interfere quite as much with the safe and convenient use of a street or sidewalk as those upon the surface.   Indeed, the danger from unsafe projections over a street would seem to be greater than from obstructions upon the surface. The latter may, in many cases, with care, be avoided by persons passing.   The former cannot, except by foregoing the use of the street so far as to keep out of the way of the matter liable to fall.  .  .   The power of a city over her streets, and the right of the public to them, extends upwards indefinitely, for the purposes of their preservation, safe use and enjoyment.   And the duty of a city in this respect is commensurate with her power.   The cornice projecting over the sidewalk, being constructed in such a manner as to be dangerous and liable to fall, was a nuisance, interfering with the safe use of the sidewalk below, and might have been abated by the city.''

But the defendant company contends that the city had authority under the second clause of section 26 of its amended charter, ''to regulate the use of its streets,'' and that by section 1157, Municipal Code, the theatre company was authorized to place the sign as was done, and its maintenance by said company was, thereafter, lawful.   This section was pleaded in the answer of the company, and was offered in evidence by it upon the trial, but upon objection of plaintiff it was excluded.   It is as follows:

''*Signs, Bow Windows and Merchandise—Regulations Concerning*—Whoever shall in this city set up, or cause to be set up, any sign, sign box or fixture, which shall extend over or upon any sidewalk more than eighteen inches from the building line or inside of said sidewalk, unless such sign box or fixture be placed on the top of an awning, the boards thereof not exceeding eighteen inches in width, and the lettering not less than ten inches high, or shall suspend any merchandise or other article in front of any house more

than eighteen inches from the wall thereof, if less than eight feet above the pavement, or more than two feet from the wall at any height above the pavement; provided, however, that nothing in this section shall be construed as applying to portable awnings, made of cloth or canvas, which, when lowered, shall not be less than seven and a half feet in the clear above the sidewalk, and whoever shall place or throw, or cause to be placed or thrown upon any highway, thoroughfare, sidewalk, or other public place any article whatever, so as to obstruct or otherwise incumber the same, or shall upon any such place expose or offer any merchandise or other property for show or sale by auction or otherwise, shall be deemed guilty of a misdemeanor; provided, that nothing in this section shall be so construed as to prevent merchants or manufacturers from occupying with their wares eighteen inches of the inside of the sidewalk where said sidewalk is eight feet or less in width, twenty inches if over eight and less than ten feet wide, and two feet if the sidewalk is ten feet or over in width. Nor shall this section be so construed as to prevent merchants from occupying a greater space on the sidewalk when receiving or shipping goods, if said goods are not permitted to remain on such sidewalk more than eight hours, and at least one-half of the sidewalk is at all times kept clear for passengers; and, provided, further, that no person shall be prevented from occupying for building purposes so much of any street or sidewalk for a reasonable time as may be assigned by the street commissioner; and, provided, further, nothing in this section shall be so construed as to prevent merchants, manufacturers and others from setting up and using illuminated signs and lettered lamps extending and being over the sidewalks more than eighteen inches from the building line or the inside of said sidewalk; provided, that said sign or lamp shall be at least twelve feet above the sidewalk; and provided, also, that the street

commissioner may order said sign or lamp to be removed if the same be insecurely fastened, or be made of such material as shall be in danger of taking fire or of communicating fire to any building, or shall on account of its size unreasonably obstruct the view upon the street, or shall be of an immoral or otherwise objectionable character.''

But conceding for the sake of argument only that the city had authority to pass this section of its code, it falls far short of conferring upon the theatre company the right to hang and maintain the sign in question which extended over the sidewalk more than twelve feet from the building line, or inside of the sidewalk, while by that section signs for advertising purposes are restricted, impliedly at least, to eighteen inches from the building line or inside of the sidewalk. It cannot, by any reasonable construction of that section, be said that the city, in passing it, contemplated the suspension of a sign like the one in question. Moreover, the ordinance does not undertake affirmatively to grant any right, but simply declares that its provisions shall not apply to certain signs. If the sign, as we have held, was one such as is not contemplated by the ordinance, then it and the right to maintain it stand just as if there were no ordinance.

In People ex rel. v. Harris, 203 Ill. 272, there was an ordinance involved which provided that no bay window should extend over any sidewalk more than eighteen inches; and the insistence was that the ordinance, by implication, authorized the construction of a bay window extending less than eighteen inches over the sidewalk, but the court held that while there was a prohibition of certain things, there was no authorization of anything.

The trial court, therefore, did not err in sustaining the objection to the introduction in evidence of the section of the code in question.

While it is held in Corby v. Railroad, supra, that

the public cannot grant to an abutting property owner or other person "the right to erect permanent advertising signs on or over any part of the public highway," it does not necessarily follow that an advertising sign suspended so high over the highway, as in this case, as not to in any way interfere with the free use of the highway by the public, perfectly safe in its structure and securely fastened to the building to which it may be attached by the abutting property owner, in the absence of any ordinance authorizing him so to do, is a nuisance *per se;* and this we understand to be the rule deducible from the authorities.

It is also claimed by the theatre company that it is not liable for the injury for which damages are claimed because the injury was caused by the negligence of an independent contractor, and that, even in the absence of a legalizing ordinance, the sign was a legal structure at common law. The argument is, that the fee in the streets of the city of St. Louis is in the abutting owner, subject to the public easement, and that the abutting owner of the fee has a right to make every reasonable use of the sidewalk and street not inconsistent with the public easement; that the public's right of passage was not impeded or interrupted by the maintenance of the sign, and that it cannot be assumed as a matter of law that a sign of this character cannot be firmly fastened and suspended so as to be as safe and harmless as any permanent structure could be.

The sign was not, we think, a nuisance *per se,* but that it was dangerous to pedestrians, while being lowered and replaced, no one will deny. The changing of the letters on the sign and the necessary lowering and replacing of said sign was by direction of the defendant company, and for its exclusive benefit.

In Wiggin v. St. Louis, 135 Mo. 558, it is held that the fact that a building is being constructed by an in-

197 Sup.—23

dependent contractor does not exempt the owner from liability for injuries to pedestrians arising from the neglect of the contractor to guard excavations adjacent to the sidewalk and required to be made by the contractor for the building.

Thompson in his work on Negligence, vol. 2, page 899, lays down the law as follows: "The general rule is, that one who has contracted with a competent and fit person, exercising an independent employment, to do a piece of work, not in itself unlawful or attended with danger to others, according to the contractor's own methods, and without his being subject to control, except as to the results of his work, will not be answerable for the wrongs of such contractor, his sub-contractors, or his servants, committed in the prosecution of such work."

So in the case of Independence v. Slack, 134 Mo. l. c. 75, it is said: "The general rule is that one employing a competent person, exercising an independent occupation, to do a work for him which is not unlawful in itself or dangerous to others, and retaining no control of the methods such person may adopt or power to direct or control him in the work except as to results, will not be answerable for the wrongful or negligent acts of such contractor or his servants committed in the prosecution of the work."

But the injury in the case at bar resulted directly from the acts called for and made necessary by the contract, that is, the changing and replacing of the sign, and not from acts which were merely collateral to the contract, and if by the negligence and carelessness of the men handling the sign it fell upon and injured plaintiff, the company is liable as if it had directly performed such acts. 16 Am. and Eng. Ency. Law (2 Ed.), 196.]

In Robbins v. Chicago City, 71 U. S. l. c. 679, it is said: "Where the obstruction or defect caused or created in the street is purely collateral to the work

contracted to be done, and is entirely the result of the wrongful acts of the contractor or his workmen, the rule is that the employer is not liable; but where the obstruction or defect which occasioned the injury results directly from the acts which the contractor agrees and is authorized to do, the person who employs the contractor and authorizes him to do those acts is equally liable to the injured party." [Bridge Co. v. Steinbrock, 61 Ohio St. 215; Deming v. Railroad, 169 N. Y. 1; Inhabitants of Lowell v. Railroad, 40 Mass. 24.]

It is also said for defendant company, that as the sign was not necessarily a nuisance, the jury was instructed upon an erroneous theory. "A nuisance *per se* is an act, thing, omission, or use of the property which in and of itself is a nuisance, and hence is not permissible or excusable under any circumstances." [21 Am. and Eng. Ency. Law (2 Ed.), 683.] Such a nuisance is a disorderly house, an obstruction to a highway, etc. The sign was safely and securely attached to the balcony and was no more a nuisance *per se* than was the balcony, but might become a nuisance by being allowed to become unsafe and dangerous to persons on the sidewalk. It was not out of repair, nor of imperfect construction, and its use not being unlawful, it was not a nuisance *per se*. The case was, however, tried upon that theory, and must be so considered here. But defendant company admits in its answer that the plaintiff's injuries, if any, were occasioned by the acts of the Chase Electric Sign Company, through its agents, employees and servants not properly securing said sign while the same was being lowered to or hoisted from the sidewalk, which is in effect an admission of its own negligence. The negligence of the Chase Electric Sign Company being thus admitted, plaintiff's position is that his instructions are not erroneous because of their failure to submit to the jury the question of negligence upon the part of said electric sign

company while taking down the sign. If the sign were a nuisance *per se,* there could be no question as to the correctness of this contention, but instructions based solely upon that theory could not be made applicable to an entirely different case; that is, an action for negligence, simply, by an allegation in defendant's answer that its agents or servants were guilty of negligence in handling the sign which was the cause of the injury. Plaintiff's instruction numbered 4 is clearly erroneous, in that it tells the jury that the hanging of the sign was an unlawful act, when in fact it was not. The plaintiff's instructions left no issue to the jury except that of contributory negligence on the part of plaintiff, and in effect directed the jury to find for plaintiff.

It is contended by defendant city that it is not liable on the petition, in which it is attempted to charge upon it liability on account of the existence of the sign over the sidewalk as for a nuisance *per se.*

The allegations as to the city are substantially as follows:

That there was an ordinance of the city prohibiting any balcony from projecting more than three feet into a street and that the balcony at the Columbia Theatre building did project more than three feet. This ordinance was not introduced in evidence by the plaintiff, and after the close of his case he withdrew these allegations.

That there was also an ordinance of the city prohibiting any sign from projecting into the street more than one foot over the building line, and that the sign which fell upon plaintiff violated this ordinance in that it projected six feet. Plaintiff did not introduce this ordinance in evidence.

That by the exercise of ordinary diligence the city could have ascertained the alleged practices of the Columbia Theatre Company in suspending signs; that the city had actual knowledge thereof; acquiesced therein; and that the mayor had issued to the theatre company

a permit which undertook to give authority to suspend signs, and that the officers and agents of the city treated such permit as lawful, and on account thereof allowed the theatre company to continue its said practices without interference.

The plaintiff introduced no evidence of any permit having been issued by the mayor to the theatre company, but on the other hand, Henry Shurk, who was proprietor of the company which had charge of hanging the signs in question, testified that he did not think they had any permit. This was all the evidence bearing on that subject.

After the withdrawal by plaintiff of the allegations of the petition to the effect that the balcony was an unlawful structure, he planted his case solely on the averment that the sign which was attached to the balcony violated an ordinance of the city, for all subsequent allegations of the petition bear altogether on the fact of notice. The question then is, can the city be held liable for failure to enforce one of its ordinances? We think not. In passing upon this question in Harman v. St. Louis, 137 Mo. l. c. 499, the court said:

"The idea that, because the city of St. Louis has the right by virtue of its authority to make by-laws and pass ordinances relating to the public safety of its inhabitants, and has exercised that right by passing an ordinance prohibiting structures of a certain character to be built within certain districts defined therein, therefore it must enforce the observance of such ordinances at the hazard of being subject to all damages which may ensue from its violation, is certainly as novel as it is startling. While it is the duty of the city, as of all governments, to protect and preserve the rights of her citizens as far as possible, and to provide and pass all needful laws and ordinances looking to that end and having those objects in view, the government does not guarantee to its citizens freedom from injury by the non-observance, or by the positive infrac-

tion, of those laws or ordinances. If the city is to be held liable for the violated ordinance pleaded in this case, or for its non-enforcement, or for its failure to punish the violators, then every time the ordinances of the city prohibiting drunkenness on the streets are violated and an injury should befall a citizen by reason thereof, it would be liable for all damages occasioned thereby. . . . And so for the neglect to enforce any or all of its police, health, and general welfare ordinances, thus becoming a gigantic insurance corporation, for all its citizens or those coming within its limits, against all the casualties incident to humanity or civil society.'' [Moran v. Pullman Palace Car Company, 134 Mo. 641; Butz v. Cavanaugh, 137 Mo. 503; Kiley v. Kansas City, 87 Mo. 103; Dillon on Municipal Corporations (4 Ed.), sec. 590.]

As plaintiff failed to introduce in evidence the ordinance pleaded by him, or the alleged permit of the mayor, defendant city insists that its demurrer to the plaintiff's evidence at the close of all the evidence should have been sustained. In the absence of this evidence plaintiff failed to make out his case, and the peremptory instruction asked by defendant city should have been given.

There was no negligence as to the city alleged in the petition or proven at the trial; therefore the last paragraph of instruction numbered 1, given in behalf of plaintiff, is erroneous. It is erroneous for the further reason that it in effect told the jury that they might find against the city if at the time the sign was being suspended it knew of it, and this, too, in face of the fact that the sign was not in itself unlawful and had never fallen before while being raised or lowered.

We are unable to see how the judgment against the city can be permitted to stand, when the petition does not allege, nor the evidence tend to show, any connection between the plaintiff's injury and the sign while attached to the balcony, nor until it was in the hands

of the contractor, for whose negligence the city is in no way responsible.

Our conclusion is that the judgment against the Columbia Theatre Company should be reversed and the cause remanded; and that the judgment against the city of St. Louis should be reversed without remanding.

All concur.