# SUPREME COURT

OF THE

## STATE OF MISSOURI,

AT THE

### OCTOBER TERM, 1894.

---

GERDES v. CHRISTOPHER & SIMPSON ARCHITECTURAL IRON AND FOUNDRY COMPANY *et al.*, *Appellants*.

### Division One, October 18, 1894.

1. **City:** USE OF STREET: DEPOSIT OF GOODS: ORDINANCE. A manufacturing company may make reasonable use of the adjacent street for the deposit of its goods in order to load and unload them, although not expressly authorized to do so by an ordinance of the city.

2. ———: ———: ———. It can not, however, make a permanent use of the street for the purpose of storing its property, nor make a temporary use which will unreasonably interfere with travel.

3. ———: ———: ———. The reasonableness of the use should be measured by the character of the articles to be handled.

4. ———: NEGLIGENCE: DEFECTIVE STREET: OBVIOUS DANGER. The use by a traveler of a street known to be defective or obstructed is not negligence as a matter of law unless it is obviously dangerous, and it appears that the danger could easily have been avoided by taking another course.

5. ———: ———: NOTICE. The fact that plaintiff lived within six blocks of the place where the street was obstructed and passed it several times within a few years does not, as a matter of law, charge him with notice that the obstruction was habitually maintained.

(347)

6. ———: OBSTRUCTION IN STREET: COLLISION: EVIDENCE. In an action for injuries received by being thrown from a wagon by collision with an obstruction in the street, it is competent to inquire of a witness as to the character of the obstruction at the time of, and for some months prior to, the accident.

7. ———: ———: ———: INSTRUCTION. Where, in an action against a city for injuries received on account of an obstruction left in the street by a manufacturing company an unreasonable length of time, the evidence was directed entirely to the obstruction, an instruction that the city was required to keep the street "in repair" is not ground for reversal, as the jury could only have understood the instruction as referring to the city's duty to remove the obstruction.

8. Practice: WILLFUL FALSE SWEARING: INSTRUCTION. Where the testimony of witnesses is wholly irreconcilable and the credibility of some is questioned, it is not error to instruct the jury that they may disregard wholly or in part the testimony of any witness who they believe had willfully sworn falsely to any material fact.

9. Personal Injury: DAMAGES: LOSS OF EARNINGS: EVIDENCE. Evidence in a personal injury action, of damages for loss of earnings is admissible under a general allegation of such loss.

10. ———: ———: FUTURE PAIN. Where the injury is permanent and future pain reasonably certain, a general allegation of damages is sufficient to authorize recovery for future pain of body and mind.

*Appeal from St. Louis County Circuit Court.*—HON. W. W. EDWARDS, Judge.

AFFIRMED.

*Campbell & Ryan* and *W. C. Marshall* for appellants.

(1) There is no evidence sufficient to support the judgment. Plaintiff's own testimony conclusively shows contributory negligence and that the wagon wheel broke in consequence of making too short a turn and not by reason of coming in contact with the iron pillar at all— a thing it was mechanically impossible for plaintiff to accomplish. *Milburn v. Railroad*, 86 Mo. 104; *Maxey v. Railroad*, 113 Mo. 1. (2) There was sufficient space for anyone using even the slightest degree of care to

have safely passed along the street, and this is all any person has a right to demand. *Bassett v. St. Joseph*, 53 Mo. 303; *Brown v. Glasgow*, 57 Mo. 156; *Hull v. Kansas City*, 54 Mo. 598; *Craig v. Sedalia*, 63 Mo. 419; *Welch v. St. Louis*, 73 Mo. 71; *Buesching v. Gaslight Co.*, 73 Mo. 219; *Russell v. Columbia*, 74 Mo. 491; *Loewer v. Sedalia*, 77 Mo. 444; *Halpin v. Kansas City*, 76 Mo. 337; *Kiley v. Kansas City*, 69 Mo. 108; *Tritz v. Kansas City*, 84 Mo. 642; *Kiley v. Kansas City*, 87 Mo. 107; *Carrington v. St. Louis*, 89 Mo. 212; *Brennan v. St. Louis*, 92 Mo. 486; *Roe v. Kansas City*, 100 Mo. 190; *Cohn v. Kansas City*, 108 Mo. 387. (3) Plaintiff had lived within six blocks of the place of the accident for seven years, and had passed the point before the accident, and knew the manner of conducting business in that manufacturing district, and that pillars were placed, from time to time, on the street, awaiting shipment, exactly where these pillars were. Knowing this fact it was his business to have exercised ordinary care, by which he could in this instance easily have avoided accident. "One who attempts to cross over a sidewalk as part of a road known to him to be dangerous, when the dangerous place could have been easily avoided, as by passing around it, or taking another side of the road, is wanting in due care and the court may so say as a matter of law." *Cohn v. Kansas City, supra; Hausman v. Madison*, 37 Cent. Law Jour. 70; *Zimmerman v. Railroad*, 71 Mo. 476. (4) The court erred in the matter of instructions. *First.* There was no evidence on which to base number 1 given for plaintiff as the question was whether there were obstructions in the street and not whether the street was out of repair. *Second.* There was no evidence to warrant the giving an instruction on the theory that any of defendant's witnesses had willfully sworn falsely. *Bank v. Murdock*, 62 Mo. 70; *State v. Brown*, 64 Mo. 367; *White v.*

*Maxcy*, 64 Mo. 552; *Fath v. Hake*, 6 Mo. App. 537; *Evans v. Railroad*, 16 Mo. App. 522; *Smith v. Railroad*, 19 Mo. App. 120; *Batterson v. Vogel*, 10 Mo. App. 235.

*John W. Collins* and *A. R. Taylor* for respondent.

(1) Under the evidence the plaintiff was entitled to go to the jury. (2) A citizen may proceed on his way upon the highway with the assurance that it is reasonably safe and is not required to anticipate the wrongful act of another in obstructing it. *O'Connor v. Railroad*, 94 Mo. 156; *Sullivan v. Railroad*, 23 S. W. Rep. 149. (3) When a person is placed in peril by the negligence of another, if in seeking to escape the peril he does not choose the safest course, his conduct is not negligence in law. *Kleiber v. Railroad*, 107 Mo. 247. (4) The king could not license a nuisance, nor can a municipal corporation, by general or implied powers. *Glaessner v. Co.*, 100 Mo. 115; Dillon on Municipal Corporations [3 Ed.], sec. 660. (5) The court did not err in giving the usual instruction as to a witness testifying willfully falsely. *State v. Buchler*, 103 Mo. 209; *Henry v. Railroad*, 109 Mo. 495; *Seligman v. Rogers*, 113 Mo. 659. (6) There is no error in the instruction on the measure of damages, and if so, it was waived by defendants. *Mellor v. Railroad*, 105 Mo. 462. (7) The verdict was not excessive. Where a woman passenger fell in a hatchway of a ship and broke an arm the supreme court of the United States held that a judgment for $15,000 would not be disturbed as excessive. *The City of Panama*, 101 U. S. 455. See, also, *Waldhier v. Railroad*, 87 Mo. 48; *Furnish v. Railroad*, 102 Mo. 455.

MACFARLANE, J.—Plaintiff recovered judgment for $5,000 against the said company, and the city of St. Louis, for injuries received on account of alleged neg-

ligence of defendants in obstructing the street, in the city of St. Louis, by depositing thereon a lot of iron pillars, by said company, with which his wagon collided, in consequence whereof he lost his leg. The petition charged negligence of said company in placing the iron on the street and of defendant, the city of St. Louis, in permitting it to remain thereon. The answer was a general denial, and a plea of contributory negligence. Both defendants have appealed.

The accident occurred on North Ninth street at its intersection with Park avenue. Park avenue runs east and west through the city, and is thirty six feet wide between the curbing. Ninth street runs north and south. South Ninth street runs into Park avenue and north Ninth street running north leaves said avenue about one hundred feet east of the intersection of north Ninth. The grade of Park avenue between these intersections is about five inches lower towards the east. The foot walk across North Ninth street is nearly level. This street descends to the north, three inches in fifty feet, and is thirty feet wide between the curbing.

The defendant company is engaged in the manufacture of iron pillars, and other material, for use in the construction of buildings. Its works are located on the corner of north Ninth street and Park avenue, fronting west on the former and south on the latter street. After heavy iron columns were manufactured by said company they were laid on these streets outside the curbing until they could be hauled away. This use of the streets was permitted by the city, though no ordinance giving permission was shown. This was a manufacturing locality, and other manufacturers in the neighborhood made a like use of the streets. Defendant company sometimes kept iron pillars on the streets for some weeks before they were removed. More or

less of material of the kind was generally on the street.

On the day of the accident said defendant had col-
umns ten inches in diameter piled on the side of each
of these streets. Those on Ninth street extended out
from the curb to a distance estimated by witnesses
at from six to fifteen feet. They were piled on top of
each other, as explained, like cannon balls. The evi-
dence tended to show that they extended still further
into Park avenue, the ends being near the corner on
that street and north of the cross walk on Ninth. How
long these pillars had remained there does not appear
definitely but some of them certainly for several days.
They made a pile three or four feet high.

On the afternoon of the accident, September 7,
1890, plaintiff borrowed a light one horse wagon, with-
out springs, having on it a bed, or box, used for haul-
ing manure. To this wagon he hitched a three year
old horse, which was gentle and tractable. He loaded
the wagon with five bundles of kindling wood, each
weighing about one hundred pounds, and started to
take it home. He traveled down South Ninth street to
Park avenue; he crossed over that avenue to the north
side and thence east allowing the wheels of the wagon
to rub against the curb to act as a brake. When he
reached the corner of Ninth street he discovered a
sewer inlet at the corner of the curb extending out
about a foot. To avoid this inlet he turned or curved
to the right. Plaintiff as a witness related what
occurred as follows:

"When I got near the corner there was a sewer
hole there, and I turned off to get around the sewer
hole; made a swing around; and when I got around
the corner (you can not hold back there after you have
made the turn), I kind of looked down Park avenue;
saw another big pile of iron there, and another big
wagon going along there, which cut that street off; I

was trotting along there, kept on turning as short as I could, and thought I could make it anyhow. Turned as short as I could; turned my wheel against the box; all at once gave a jar and I seen the wagon wheel against the iron and it kind of sank down and the front box tipped up and threw me away over on the posts. * * * When I looked back after I felt the jar, I saw the right hind wheel against the iron. Front wheel was past the iron. I had turned short to get past and to squeeze the front wheel past, and the hind wheel kind of slipped over and caught the iron posts, and the wheel was against one of the posts. As soon as it jarred, the wagon sank down and the front part of the box tipped sideways, and I was thrown on the iron.''

Plaintiff further testified that the collision occurred eight or nine feet north of the cross walk; that the horse was on the cross walk before he saw the iron and discovered that it was dangerous. Could not stop because the wagon was pushing the horse. He checked him up.

There was a great and irreconcilable conflict in the evidence as to the cause and manner of the accident, particularly as to whether the wheel of the wagon touched the iron at all and as to the distance the iron extended into the street.

At the close of the evidence defendants asked an instruction, in the nature of a demurer to the evidence which was refused. To this action of the court error is assigned on the ground that no negligence of defendants was shown, and that plaintiff was conclusively shown to have been guilty of contributory negligence. The other errors assigned are to the admission of evidence and the giving of instructions.

I. The general rule which has been repeatedly declared by this court is that municipal corporations

are bound to keep their streets and highways in a proper state of repair and free from obstructions so that they will be reasonably safe for travel; and if, having notice of defects or obstructions, they neglect to repair or remove them they will be liable for all injuries, provided that he who received the injury was, himself, at the time, in the exercise of due care. *Smith v. St. Joseph*, 45 Mo. 449; *Flynn v. Neosho*, 114 Mo. 572, and cases cited.

There is a well recognized qualification to this strict rule which is declared by Judge DILLON in this language: "But it is not every obstruction, irrespective of its character or purpose, that is illegal, even although not sanctioned by any express legislative or municipal authority. On the contrary, the *right of the public to the free and unobstructed use of a street or way is subject to reasonable and necessary limitations and restrictions.* The carriage and delivery of fuel, grain, goods, etc., are legitimate uses of a street, and may result in a temporary obstruction to the right of public transit. * * * Temporary obstructions of this kind are not invasions of the public easement, but simply incidents to or limitations of it. They can be justified when, and only so long as they are, reasonably necessary. There need be no *absolute* necessity: it suffices that the necessity is a *reasonable* one." 2 Dillion on Munic. Corp. [4 Ed.] sec. 730 and cases cited. *Stephens v. Macon*, 83 Mo. 346; *Welsh v. Wilson*, 101 N. Y. 256.

There can be no doubt, under this obviously just qualification, that the manufacturing company had the right to make reasonable use of these streets for the deposit of their manufactured goods, for the purpose of loading and unloading them, though not directly authorized by an ordinance of the city. But it had no right to make a permanent use of the streets for storing its property, or to make such temporary use as would

unreasonably interfere with travel. The reasonableness of the use should be measured by the character of the articles to be handled. It appeared from the evidense that some of the iron pillars, which caused the obstruction in question, had been on the streets for a number of days, and it was a proper question for the jury to say whether they were allowed to remain an unreasonable length of time. We think that defendants could fairly have been charged with negligence under the evidence.

II. It is the duty of a traveler on a public street to exercise reasonable care; but it is held that the use of a street known to be defective, or obstructed, can not be charged as negligence in law. *Loewer v. Sedalia*, 77 Mo. 444; *Smith v. St. Joseph, supra*; *Maus v. Springfield*, 101 Mo. 618.

But one will be chargeable with negligence in law, who is injured in an attempt to pass over an obstruction or defect in a street which is obviously and necessarily dangerous. In such case he assumes whatever risk may attend the undertaking. "A party is not to cast himself upon an obstruction which has been made by the fault of another, and avail himself of it, if he do not himself use common and ordinary caution to be in the right." *Butterfield v. Forrester*, 11 East, 60. "One who attempts to cross over a sidewalk as part of a road, known to him to be dangerous, when the dangerous place could have been easily avoided, as by passing around it, or taking another side of the road, is wanting in due care, and the court may so say as a matter of law." *Cohn v. Kansas City*, 108 Mo. 393. This principle is clearly recognized in *Maus v. Springfield, supra*.

Beach, in his work on contributory negligence (sec. 247), declares the rule in this language: "When the highway is out of order it is held, as a general rule,

not negligent to use it in as prudent a way as practicable, which is to say that using a defective highway is not negligence as a matter of law. It would be an extraordinary rule that made it negligence not to stay in doors whenever the highway is out of repair. But when the condition of the highway is such that it is obviously dangerous to go upon it, and it appears that the plaintiff might easily have taken another course and avoided the danger, there can be no recovery in case of an injury. To go upon such a highway, under such circumstances, is negligence sufficient to bar an action for damages." See cases cited.

Defendants insist that under these rules of law applied to the evidence in this case plaintiff is chargeable with such contributory negligence as bars a recovery.

There would be much force in this contention if the evidence showed conclusively that plaintiff attempted to turn into Ninth street, in the manner shown by the evidence, with knowledge of the danger he would incur in doing so. But plaintiff testified, and the jury must determine the weight to be given his evidence, that he did not see the obstruction, or the dangers it involved, until his horse was upon the walk across Ninth street, and he was at that time within ten or fifteen feet of the iron pillars; that the horse was in a trot, the wagon, having no brakes, was pushing him, by reason of which he was unable to stop, nor could he then change his course back upon Park avenue, because that street was similarly obstructed. Admitting the truth of this evidence, which we must do on this inquiry, we can not say as a matter of law that plaintiff was negligent, either in going into a dangerous situation, or in his efforts to avoid a collision, though he may not, in the emergency, have used the safest means to extricate himself.

Though the circumstances tend strongly to prove it, we can not say, as a matter of law, that plaintiff was aware of the dangers he would encounter in making so short a turn into Ninth street. He had the right to assume, in the absence of notice, or knowledge of the usual condition of the street, that he had the whole width of the street in which to turn his wagon. He was not traveling on Ninth street until he turned thereon within a few feet of the obstruction. His duty may have required him to see that the street immediately in front of him was clear. This he did and saw the difficulty in the way of proceeding down Park avenue. This determined him to change his route onto Ninth street. Until he commenced making the turn his attention was not called to the pile of castings, nor can we say, in the circumstances, as a matter of law, that he was negligent in not seeing it, though it seems very improbable that he should drive to within fifteen feet of a pile of iron columns, admittedly six feet wide, and near three feet high, without observing it. Had it been in front of him, and upon the street he was traveling, we would have no hesitation in saying that he did see it, and took upon himself the risk of passing it in safety. As it was, we do not feel justified in taking the question from the jury.

Nor can we say, as a matter of law, that plaintiff had knowledge of the habitual obstruction of the street from the facts that he lived within six blocks of the place and had passed it several times within a few years previous to the occasion of his injury. The observations he may then have made may have been so casual as to leave no such lasting impressions on his memory, as would charge him with knowledge. Moreover, he may have noticed obstructions at one or more times without being chargeable with knowledge that they were constantly maintained. His knowledge of the condi-

tion of the street was also a question for the determination of the jury.

All these questions were fairly submitted to the jury under instructions of the court. We think that plaintiff made a case which was properly submitted to the jury.

III.  During the trial a witness was asked to state, how, about the time of the accident, and for some months before, iron was piled up along on the east side of Ninth street. This question was objected to as being immaterial, incompetent and irrelevant. The objection was overruled, and the witness answered that he had seen it piled out in the middle of the street; "it had been that way pretty near all along."

The petition charged, in substance, that on the fifteenth day of September, 1890, and for a long time prior thereto, defendant company had wrongfully placed, and permitted to remain upon the street, iron castings, in consequence of which, on said day, said street was obstructed, and made unsafe for persons with horses and vehicles to travel upon or along the same, and that the city had notice and permitted this obstruction. The general denial of defendants put in issue not only the fact of the obstruction, but also the fact that it was wrongful.

As has been seen, defendant company had no right, even in the conduct of its business, to obstruct the street in an unreasonable manner for any length of time, or for an unreasonable time in any manner. Plaintiff had the right, under the issues, to prove that the obstruction was wrongful in either or both of these particulars. For the purpose of proving, then, that the obstruction was wrongful on account of the unreasonable time it had been continued, the evidence was admissible against said defendant company. It was also admissible against the city as tending to prove

notice to it of the manner in which the street was habitually used, and inferentially of its use on the day of the injury to plaintiff.

IV.   Defendant objects to the third and fourth instructions.  These instructions told the jury, in substance, that defendant company had no right in the conduct of its business, to occupy said street, in front of its premises, in receiving and discharging its manufactured goods and material, or in such a manner as to cause obstruction for weeks or months, or for an unreasonable time, and, if it did so prior to, and at the time of, plaintiff's injury, it was guilty of actionable negligence.

The same objections are made to these instructions as were urged to the admissibility of the evidence of such continued use of the street.   In addition to what has already been said on the subject, we may add, that no one has the right, in the management of its business, whatever its character, nor however necessary and convenient it may be, to constantly, or for any considerable portion of the time, use the street in front of his premises for the deposit of his goods and thus interfere with its legitimate use.   Wood on Nuisances, p. 314. The instructions were not objectionable.

V.   The court declared by the first instruction given in behalf of plaintiff, that it was the duty of the city to have used "reasonable and ordinary care to keep said street in repair and in a condition reasonably suitable and safe for travel thereon."   This instruction is criticized on the ground that there was neither allegation nor proof that the street was in any respect out of repair.

It is true that the petition charged, and the evidence tended to prove, a wrongful obstruction of the street itself.   But we can only regard this use of the word as a slight want of accuracy which could not have misled the jury.   All the evidence was directed to the

castings placed upon the street and the jury could only have understood the instruction as referring to the duty of the city to prevent or remove such obstructions.

VI.    The testimony of the witnesses on some of the questions is quite conflicting.    Indeed wholly irreconcilable.    The credibility of some of them was also questioned.    In view of these facts we can not say that there was no occasion for giving an instruction to the effect that if the jury believed that any of the witnesses had willfully sworn falsely, to any material fact, they might disregard the whole, or any part of his testimony. *Seligman v. Rogers*, 113 Mo. 659.

VII.    Defendants complain of that part of the instruction on the measure of damages which allows compensation:    "*First*.    For any pain of body or mind that he has suffered, or will hereafter suffer, by reason of said injury.    *Second*.    For any loss of earnings that he has suffered, or will hereafter suffer, by reason of said injury," etc.

The petition lays plaintiff's damages in the following language:    "Whereby he has been permanently disabled from performing labor, and has been made a cripple for life,   *   *   *   also suffered great pain of mind and body; and he is unfitted for carrying on his vocation, and he has lost and will lose the earnings of his labor," etc.    This is followed by a general allegation of damages.

The petition counts specially on loss of earnings as an element of damages.    We do not think it necessary to allege the *quantum* of such damage.    "It is one sort of special damages and consequently must in some wise be counted upon to constitute a basis for evidence on the subject."    *Mellor v. Railroad*, 105 Mo. 464, and cases cited.    It is clearly inferable from these decisions that evidence of damages, for loss of earnings, is admissible under a general averment of such loss.

We do not agree to the proposition that damages are not recoverable under this petition for future pain of body or mind. When the injury is permanent, and future pain reasonably certain, a general allegation of damages will be a sufficient basis for allowing compensation for these elements. They are the necessary and natural result of the act complained of, and need not be specially pleaded. 5 Am. and Eng. Encyclopedia of Law, pp. 49 and 50; 3 Sutherland on Damages [2 Ed.], sec. 1060; 2 Sedgwick on Damages [8 Ed.], sec. 606; *Railroad v. Curry*, 64 Tex. 85. We see no error in this instruction.

Finding no error upon the record, the judgment is affirmed. BLACK, C. J., and BRACE, J., concur.