## O'HARA, Respondent, v. LACLEDE GAS LIGHT COMPANY, Appellant.

### St. Louis Court of Appeals, April 14, 1908.

#### (Opinion by Bland, P. J.)

1. **NEGLIGENCE: Independent Contractor.** A teaming company, having with a gas company a contract which provided that the teaming company should haul and distribute gaspipes along the streets as directed by the gas company, where there was no control retained by the gas company over the manner in which the gaspipes should be loaded or unloaded, or by what means they should be blocked in order to prevent their rolling, was an independent contractor, so that the gas company was not liable for damages, caused by the negligent piling of the gaspipes, on the theory that the servants of the teaming company were the servants of the gas company in piling them.

2. ———: ———: **License to Obstruct Street: Delegating Duty.** But a gas company, having a license from a municipal corporation to temporarily obstruct the streets with its pipes, was under obligation to guard such pipes so as to prevent injuries to pedestrians and to children playing in the streets. Where such gas company contracted with a teaming company to haul and unload pipes at points to be designated by the gas company in the street, it could not escape liability for injuries caused to a child playing in the street by the rolling of the gaspipes upon it in consequence of being negligently piled, on the ground that the teaming company was an independent con-

tractor; the placing of the pipes upon the street was made necessary by the contract and the defendant could not delegate to an independent contractor its duty to make them secure.

3. ———: ———: **Contributory Negligence.** Where a gas company caused gaspipes to be piled on the side of a street on sloping ground and not blocked so as to prevent their rolling, and a boy nine years of age while passing along the street was killed by the rolling of a gaspipe upon him, neither the boy nor his mother who sent him on an errand along the street was guilty of contributory negligence, though they knew the pipes were there, were not blocked and were dangerous.

4. **MUNICIPAL CORPORATIONS: Public Highways.** In an action against a gas company for injuries received in a street by the rolling of gaspipes which the defendant had negligently piled in the street, where the evidence of both parties showed that the street had a name, that houses fronted on it and were numbered and defendant was having pipes laid in it, this was sufficient evidence to show that it was a public street.

5. **DAMAGES: Parent and Child: Measure of Damages.** In an action by a mother for damages caused by the death of her child, an instruction on the measure of damages authorizing a recovery for the loss of services of the child only, was erroneous in that her damages should not have been so limited, but the error being against the plaintiff, the defendant could not complain of it.

6. **NEGLIGENCE: Dangerous Obstruction in Street: Acts of Children.** The act of a gas company, in causing gaspipes to be piled on sloping ground in a street without blocking them so as to prevent their rolling, was negligence so as to render it liable for injuries to a child caused by the rolling of the pipe, although the pipes were put in motion by other children playing upon them, where the evidence showed children were in a habit of playing on that street and the pipe was so piled as to be easily put in motion.

### (Concurring Opinion by Nortoni, J.)

7. ———: **Independent Contractor: Delegating Duty.** Where a gas company had a contract with a teaming company whereby the latter was to haul and distribute gaspipes along the street of a city, the gas company could not delegate to the teaming company its duty to safeguard the dangers connected with its occupancy of the street in that manner, although the teaming company was an independent contractor in such work. Both teaming company and gas company were liable for injuries to a passer on the street, caused by the rolling of such gaspipes on

O'Hara v. Gas Light Co.

account of the negligent failure of the teaming company to block them so as to prevent rolling.

8. ———: ———: ———: **Obstruction in Street.** And where the contract of a gas company with a teaming company provided that the latter should place the pipes where directed by the gas company, the gas company was charged with knowledge that the place where the pipes were piled was on an incline such as to render the pipes likely to roll; it was the duty of the gas company to block the pipes to prevent their rolling, a duty it could not shift to the teaming company.

(Dissenting Opinion by Goode, J.)

9. ———: **Obstruction in Street: Acts of Children.** A gas company caused gaspipes to be unloaded in a street where they remained stationary for several hours, a length of time sufficient to show that they were securely laid, and carelessness could not be inferred in the manner of laying them from the fact that they were caused to roll by children, where there was nothing to show that the pipes were attractive to children or so dangerous as to impose upon the gas company the duty of taking precautions with special reference to children.

10. ———: **Independent Contractor: Obstruction in Street.** Laying of gas mains in a street is not a dangerous work *per se* so as to require special precautions to prevent injury to travelers on the street, and where a teaming company, having a contract with a gas company to distribute pipes along the street, negligently piled them so they were likely to roll, such negligence was in the manner of performing the task and not in the task itself so that the gas company was not liable for injuries caused by such negligent piling.

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow,* Judge.

AFFIRMED AND CERTIFIED TO SUPREME COURT.

*Seddon & Holland* for appellant.

The court erred in refusing to give the peremptory instruction asked by appellant at the close of all the evidence. Ege v. Brick & Construction Co., 118 Mo. 630; Fink v. Furnace Co., 82 Mo. 276; Morgan v. Bowman, 22 Mo. 538; Crenshaw v. Ullman, 113 Mo. 633; Independence v. Slack, 134 Mo. 66; Blumb v. Kansas

City, 84 Mo. 112; Dillon v. Hunt, 82 Mo. 150; Gerdes v. Christopher & Simpson, 124 Mo. 347.

*A. R. Taylor* for respondent.

STATEMENT.—The action is to recover damages for the death of plaintiff's minor son, Francis Desmond O'Hara, alleged to have been caused by the negligence of defendant. Pending the suit in the circuit court, the father of the deceased, Dennis O'Hara, died and the cause was revived in the name of Annie O'Hara, his mother. The action was dismissed as to all the defendants except the Laclede Gas Light Company and was prosecuted to a final judgment against said company, from which judgment it appealed.

The testimony shows defendant is a corporation engaged in the business of furnishing and distributing gas for illuminating and fuel purposes, in the city of St. Louis, and had a contract with a construction company to lay underground gaspipes on Howard street in said city. It appears the gas company undertook to deliver the pipes to be laid under the street and to that end contracted with the Uffman Coal & Teaming Company to haul the pipes from cars and deliver them to it on such streets as it should direct. Plaintiff resided with her family at No. 3201 Howard street, near a brewery stable. The house and stable are on the north side of the street where the pipes were being laid. The street is unimproved; from the north line to its center there is a down grade of about two and one-half feet; from the center south to the south line of the ground is level. On July 17, 1903, the teamsters of the Uffman Coal & Teaming Company delivered three or four gaspipes on the north side of Howard street, unloading them in front and near the brewery stable. The pipes were about two feet in diameter, from twenty-four to twenty-five feet long and weighed from twenty-four to twenty-five hundred pounds. Francis Desmond

O'Hara was nine years and a few months old, had attended school for two years and was a strong, healthy, intelligent boy.    Plaintiff's evidence tends to show the pipes were unloaded about 5:30 p. m., and were not blocked or otherwise secured.    There were a good many children in the neighborhood who played in the street and on the sidewalks every evening.    On the evening the accident happened, plaintiff sent her son to a bakery on an errand and either on his way there or on his return, and while standing in the middle of the street, a gaspipe laying in front of the brewery stable was started rolling by some boys playing on or about it.    It rolled into the middle of the street, struck the O'Hara boy, knocked him down, rolled on him and crushed his skull, causing his death.    Plaintiff, Mrs. O'Hara, testified she knew the pipes were in the street and children would play about them, and that both she and her husband cautioned their son to keep away from them.

On defendant's behalf the evidence tends to show the pipes were all blocked by the teamsters who unloaded them; that they would not remain in place unless blocked; that the deceased and other children were playing about the pipes, jumping on and running around and over them, and that deceased was standing or sitting on the pipe when it started to roll and fell in front of it.

As a special defense, the answer pleads contributory negligence on the part of the deceased and also on the part of his parents.

BLAND, P. J. (after stating the facts).—1.    The agreement for hauling the pipes, entered into between the Laclede Gas Light Company and the Uffman Coal & Teaming Company, is as follows:

"Agreement    entered    into    this    twenty-second day of April, 1903, by and between the Uffman Coal and Teaming Company, party of the first part, and the

Laclede Gas Light Company, party of the second part, both of St. Louis, Mo.    Witnesseth:

"1st.    The party of the first part hereby agrees to haul such quantities of cast-iron gaspipe from cars to streets or lots designated by the party of the second part or from storage lots to streets, and to distribute such pipe along the streets as required by the second party.

"2nd.    The quantities of pipe to be delivered under this contract shall not be less than eighty tons per day if the second party. requires that amount.

"3rd.    The first party to unload cars promptly and to protect the second party from all demurrage charges growing out of detention of cars in the railroad yards from any cause whatever, provided not more than five cars are placed on track for unloading in one day.

"4th.    The party of the first part to be responsible for any damage to pipe in unloading or delivering to lot on the street.

"5th.    In consideration of the above, the party of the second part hereby agrees to pay the party of the first part at the rate of one dollar and forty-five cents ($1.45) per ton of 2,000 lbs. for all pipe delivered as herein provided.    Payments to be made on the tenth of each month for all pipe delivered the previous month."

At the close of all the evidence, defendant moved the court to instruct the jury that under the law and evidence plaintiff was not entitled to recover.    The refusal to grant this instruction is assigned as error.    Defendant's contention is that the Uffman Company was an independent contractor for the delivery of the pipes and its servants were not defendant's servants and for that reason defendant is not liable for their negligence in failing to block the pipes.    It is argued that there

131 App.—28

is no testimony that defendant designated any place for the delivery of the pipes, or the particular pipe that rolled upon the O'Hara boy. The first clause of the contract provides that the Uffman Company should distribute the pipes along the streets as required by defendant. This clause of the contract bound the Uffman Company to deliver the pipes to such streets as defendant should designate and distribute them along the streets as directed by defendant. It gave the defendant company the undoubted right to designate not only the street upon which pipes should be delivered, but to say what number of pipes should be delivered upon any particular street and the manner of their distribution, and in this respect left no independent judgment in the Uffman Company. In other words, the Uffman Company was obliged, under the contract, to deliver and distribute the pipe according to defendant's orders. The evidence shows that the Abbott-Gamble Contracting Company (the company having the contract to place the pipes underground) was laying gaspipes underground in Howard street for defendant at the time of the accident, and that the pipes were distributed on the street a little ahead of the excavation made by said company; and while there is no direct evidence to show defendant directed the Uffman Company to deliver the particular pipe where it was delivered, yet as defendant reserved the right to designate where the pipes should be distributed, the fair inference is that it exercised this right and directed the Uffman Company to deliver pipes on the north side of Howard street and distribute them as they were distributed. Was the Uffman Company an independent contractor as that term is understood in the law?

In Fink v. Missouri Furnace Co., 82 Mo. l. c. 283, the Supreme Court adopted Judge Thompson's definition of an independent contractor, which is, "One who renders service in the course of an occupation represent-

ing the will of his employer only as to the result of his work and not as to the means by which it is accomplished." [1 Thompson's Commentaries on Negligence, sec. 622.] In the same section the author says: "In every case, the decisive question is, had the defendant the right to control, in the given particular, the conduct of the person doing the wrong?"

In Long v. Moon, 107 Mo. 1. c. 339-40, 17 S. W. 810, the court said: "The law is well settled that 'where a person contracts with another, exercising an independent calling, to do a work for him according to the contractor's own methods and not subject to his control or orders except as to results to be obtained the former is not liable for the wrongful acts of such contractor or his servants.' [14 Am. and Eng. Ency. Law, p. 830, and cases cited, note 3; Barry v. St. Louis, 17 Mo. 121, and cases cited; Morgan v. Bowman, 22 Mo. 538; Clark's Adm'x v. Railroad, 36 Mo. 202; Hilsdorf v. St. Louis, 45 Mo. 94; Dillon v. Hunt, 82 Mo. 150; Fink v. Furnace Co., 82 Mo. 276; Blumb v. City of Kansas, 84 Mo. 112; Lancaster v. Insurance Co., 92 Mo. 460, 5 S. W. 23.]"

In Crenshaw v. Ullman, 113 Mo. 639, 20 S. W. 1077, the court said: "An independent contractor . . . is one who renders service in the course of an occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished. The contractor must answer for his own wrongs and the wrongs committed in the course of the work by his servants."

In Gayle v. Missouri Car & Foundry Co., 177 Mo. 1. c. 446, 76 S. W. 987, Judge THOMPSON's definition of an independent contractor and the case above cited are approved, and the same definition is given by the Court of Appeals in Burns v. McDonald, 57 Mo. App. 599.

The accepted doctrine is, "In cases where the essential object of an agreement is the performance of

work, the relation of master and servant will not be predicated as between the party for whose benefit the work is to be done, unless the former has retained the right to exercise control over the latter in respect to the manner in which the work is to be done." Now, while defendant retained the right to designate the streets upon which the Uffman Company should deliver pipes and how they should be distributed on the streets designated, it did not retain control over the manner in which they should be loaded or unloaded, nor had it the right to direct the haulers in what manner or by what means the pipes should be blocked, if blocking was necessary after they were unloaded on the street, and it cannot be said that the teamsters who unloaded the particular pipe were defendant's servants as well as the servants of the Uffman Company. But the placing of the pipes on the street was by direction of defendant Company and for its exclusive benefit, and in the exercise of a power granted it by the city, and the death of the O'Hara boy resulted directly from the acts called for in the contract between defendant company and the Uffman Company. The pipes were an obstruction in the street and could not have been lawfully distributed upon it except by permission of the city, hence it was the personal duty of defendant company, to whom the license had been granted to temporarily obstruct the streets with its pipes, to properly guard and block them to avoid injury to pedestrians and to children. Defendant should be charged with knowledge that children would play on the street and be attracted by the pipes. In these circumstances, with respect to the pipes while they were on the street, defendant company occupied the same relation to the public and was under the same obligation as would have been the city had it been engaged in putting the pipes underground. Its duty was a positive one, to guard the pipes to prevent injury to pedestrians and to children playing on the

street.    It could not delegate or shift this duty to an independent contractor (16 Am. and Eng. Ency. of Law, p. 197).    The case therefore falls within the exception to the general rule relieving an employer from liability for damages caused by the negligence of an independent contractor.    This exception is well stated in the case of Village of Jefferson v. Chapman, 127 Ill. 438, as follows:    "Where the party causing the work to be done is under a primary obligation, imposed by law, to keep the subject-matter of the work in a safe condition.    The principle upon which this exception is predicated is, that when a duty is so imposed, the responsibility for its faithful  performance  can not be avoided, and that the party under such obligation can not be relieved therefrom by a contract made with another for the performance of such duty."

In Woodman v. Metropolitan Railroad, 149 Mass. l. c. 340, it is said:    "If the performance of a lawful contract necessarily will bring wrongful consequences to pass unless guarded against, and if, as in the present case, the contract cannot be performed except under the right of the employer, who retains the right of access to the premises, the law may require the employer at his peril to see that due care is used to prevent harm, whatever the nature of his contract with those whom he employs."

In Pettengill v. City of Yonkers, 116 N. Y. 558, it was ruled:    "It is the duty of a municipal corporation to keep its streets in a safe condition for public travel, and it is bound to exercise reasonable diligence to accomplish that end; this is so as well where an obstruction rendering travel unsafe is caused by a third person, as where it is the act of the corporation.

"Where, therefore, public or private improvements are being made in a city street causing an obstruction, it is the duty of the city to guard them so as to protect

travelers on the street from receiving injuries there-from.

"The municipality is not absolved from liability by the fact that the obstruction was caused by a contractor with the city, who by his contract, is bound to properly guard it or to place warning lights."

In Russell v. Inhabitants of the Town of Columbia, 74 Mo. 480, a gas company empowered by law to lay its gaspipes through the streets of a city with the consent of the city authorities, obtained such consent, agreeing on its part to leave the streets in good condition and not to allow the ditches it might dig to be left open longer than should be necessary to lay or repair the pipes.    In the prosecution of its work the company opened a ditch in one of the streets, which, for want of pipe, was left open for several days.    Whilst so exposed, plaintiff, passing at night, fell in and was hurt, "Held, that the city having given the company permission to occupy the street was liable to the same extent as if the ditch had been opened by its own servants, i. e., without proof of notice; that the fact that the city had obtained from the company an agreement for securing the safety of the streets did not do away with the city's liability, and that the plaintiff, if free from fault or negligence on her part, might recover for the injuries sustained, though she knew of the existence of the ditch when she went into the street."

In Wiggin v. St. Louis, 135 Mo. 558, 37 S. W. 528, it was held that the fact that a building is being constructed by an independent contractor does not exempt the owner from liability for injury to pedestrians, arising from the negligence of the contractor to guard excavations adjacent to the sidewalk and required to be made by the contractor for the building.    [See also Benjamin v. Street Railway, 133 Mo. 274, 34 S. W. 590.]

The facts in the case of Loth v. Columbia Theatre

Co., 197 Mo. 328, 94 S. W. 847, were, the Columbia Theatre Company occupied a building fronting on the west side of Sixth street, in the city of St. Louis. Attached to the building and extending over the sidewalk was a balcony supported by posts at the outer edge of the sidewalk. On either side of this balcony, defendant suspended a large sign, from twelve to fourteen feet long and five feet ten inches wide, and weighing from two hundred to three hundred and fifty pounds, according to the number of letters placed thereon. The signs had the attractions of the theatre named and described by electric bulbs arranged in the form of letters. These letters were changed every Sunday morning between eight and eleven o'clock to correspond with the change in attractions. To change the letters it was necessary to remove the signs from their fastenings and lower them. On Sunday morning, October 22, 1899, plaintiff walked north on the west side of Sixth street and passed under the balcony, at which time workmen were engaged in lowering one of the signs, which fell upon and struck plaintiff, shattering his leg. The signs were changed under a contract with the Chase Electric Sign Company and it was claimed by the Theatre Company that it was not liable for plaintiff's injury because the injury was caused by the negligence of an independent contractor. In respect to this defense, BURGESS, P. J., writing the opinion of the court, at page 353, said: "The sign was not, we think, a nuisance *per se,* but that it was dangerous to pedestrians, while being lowered and replaced, no one will deny. The changing of the letters on the sign and the necessary lowering and replacing of said sign was by direction of the defendant company, and for its exclusive benefit;" commenting on and approvingly citing the case of Wiggin v. St. Louis, supra, and after stating the general rule in respect to the nonliability of the owner for the negligence of an independent contractor, at page 354, said: "But

the injury in the case at bar resulted directly from the acts called for and made necessary by the contract, that is, the changing and replacing of the sign, and not from acts which were merely collateral to the contract, and if by the negligence and carelessness of the men handling the sign it fell upon and injured plaintiff, the company is liable as if it had directly performed such acts. [16 Am. and Eng. Ency. Law (2 Ed.), 196.]

In Robbins v. Chicago City, 71 U. S. l. c. 679, it is said: "Where the obstruction or defect caused or created in the street is purely collateral to the work contracted to be done, and is entirely the result of the wrongful acts of the contractor or his workmen, the rule is that the employer is not liable; but where the obstruction or defect which occasioned the injury results directly from the acts which the contractor agrees and is authorized to do, the person who employs the contractor and authorizes him to do those acts is equally liable to the injured party. [Bridge Co. v. Stenibrock, 61 Ohio St. 215; Deming v. Railroad, 169 N. Y. 1; Inhabitants of Lowell v. Railroad, 40 Mass. 24.]"

In 16 Am. and Eng. Ency. of Law, p. 196, under the heading of "Independent Contractors," it is said: "If the injury results directly from the acts called for or rendered necessary by the contract, and not from acts which are merely collateral to the contract, the employer is liable as if he had himself performed such acts."

Placing the pipes to be laid underground on the street was permissible and necessary under the contract and was not merely collateral to the contract; for this reason and for the further reason that defendant could not delegate its personal duty to properly secure the pipes to an independent contractor, it is liable as if it had placed the pipes on the street and left them without blocking.

It is also contended by defendant that plaintiff and

her son, who was killed, were both guilty of contributory negligence.    Plaintiff knew the pipes were on the street and knew they were not blocked and were dangerous for children to play about them and warned her son not to go near them.    She sent him on an errand to a bakery.    This evidence does not prove or tend to prove she was negligent.    The boy was in the middle of the street when he was knocked down by the pipe and killed. Plaintiff's evidence does not show or tend to show her son was on the pipe or near it when it started to roll across the street, nor does it show that he had any agency whatever in starting the pipe to roll; on the contrary, it shows the pipe was put in motion by other children playing on and about it.    This evidence refutes the charge that the boy was guilty of contributory negligence, therefore the court properly denied the instruction in the nature of a demurrer to the evidence.

2.    The court gave the following instructions for plaintiff:

"1.    If the jury find from the evidence in this case that the plaintiff, Annie O'Hara, was the mother of Francis Desmond O'Hara mentioned in the evidence at the time of his death, and if the jury find from the evidence that the father of Francis Desmond O'Hara, Dennis O'Hara, has died since this action was brought, and if the jury find from the evidence that Dennis O'Hara and the plaintiff, the father and mother of Francis Desmond O'Hara, instituted an action in the circuit court of the city of St. Louis on the seventeenth day of September, 1903, against the defendant Laclede Gas Light Company, and others, to recover damages on account of the death of their said son, and if the jury find from the evidence that said action was transferred by a change of venue from the circuit court of the city of St. Louis to the circuit court of the county of St. Louis on the twenty-fourth day of May, 1905, by order of the circuit court of the city of St.

Louis, and if the jury find from the evidence that on the nineteenth day of June, 1906, the plaintiffs in said action suffered a nonsuit in said action in said circuit court of the county of St. Louis.

"And if the jury find from the evidence, that the plaintiffs, Dennis O'Hara and Annie O'Hara, instituted this action again on the seventeenth day of July, 1906, against the Laclede Gas Light Company and others for the same cause of action, sued for in said first mentioned action.

"And if the jury find from the evidence in this case that Francis Desmond O'Hara at the time of his death was a minor and unmarried.

"And if the jury find from the evidence in this case that Howard Street at the time mentioned in the evidence was an open public street within the city of St. Louis.

"And if the jury find from the evidence that the Uffman Coal & Teaming Company hauled the iron pipe mentioned in the evidence as injuring plaintiff's child, and placed it on Howard street at the place mentioned in the evidence.

"And if the jury find from the evidence that the said Uffman Coal & Teaming Company hauled said pipe and placed it on Howard street under a contract with the defendant Laclede Gas Light Company, read in the evidence, for the Laclede Gas Light Company.

"And if the jury find from the evidence that said Uffman Coal & Teaming Company by its servants, under said contract placed said pipe on said street, and left it in an insecure condition and so that it was on an incline and uneven surface of said street, and in such position that it would roll from the place where so placed and injure persons upon said street.

"And if the jury find from the evidence that said iron pipe was so placed upon said street to be laid by the Abbott-Gamble Contracting Company for defend-

ant, Laclede Gas Light Company, under contract with the defendant, Laclede Gas Light Company.

"And if the jury find from the evidence that said pipe as so placed by the Uffman Coal & Teaming Company was unpropped and unfastened, and would roll upon the surface of said street upon slight pressure or force.

"And if the jury find from the evidence that said pipe as so placed upon said street was an attraction to children to be and play on and about said pipe.

"And if the jury find from the evidence that defendant and its agents and contractor so placing said pipe upon said street knew or in the exercise of ordinary care, would have known that children would be attracted to play at and about said pipe so placed on said street, and would be liable to be injured by said pipe rolling from said place when so placed.

"And if the jury find from the evidence that defendant and its contractor so causing said pipe to be so placed upon said street and left in said insecure condition, did not exercise ordinary care in doing so.

"And if the jury find from the evidence that on the seventeenth day of July, 1903, whilst said pipe was so upon said street, in said insecure condition, in which it was placed and left upon said street by defendant's said contractors was caused to roll upon and over plaintiffs' son and so injure him as to cause his death.

"And if the jury find from the evidence that the father and mother of said child exercised ordinary care according to their means and station in life to guard said son from said danger by which he was injured.

"And if the jury find from the evidence that the deceased son of the plaintiff was at the time of his said injury exercising ordinary care according to his age, discretion and experience, and such care as a boy of his age, discretion and experience would ordinarily use under the same or similar circumstances, then the plain-

tiff is entitled to recover such damages as the jury believe from the evidence will be a fair pecuniary compensation to her for the death of her said son.

"2. The court instructs the jury that if the defendant Laclede Gas Light Company, employed the Uffman Coal & Teaming Company to have the iron pipe, mentioned in the evidence as rolling upon and causing the death of plaintiff's son, hauled and placed in Howard street. Then if the jury find from the evidence that said Uffman Coal & Teaming Company did haul and place said iron pipe in said street and leave it there in the insecure condition set forth in the instruction number one given at instance of the plaintiff.

"And if the jury find the facts to be as set out in said instruction number one, defendant Laclede Gas Light Company is liable for the acts of Uffman Coal & Teaming Company in so leaving said pipe in said insecure condition on said street.

"And if plaintiff's son was injured and died from such injury by reason of said pipe rolling upon and over him, and if said pipe was insecure in the position in which it was placed and left by Uffman Coal & Teaming Company as set out in said instruction number one, and if by reason of said insecure condition of said pipe it rolled upon and over plaintiff's son and killed him as set out in said instruction number one.

"And if the father and mother of said child exercised ordinary care, such as parents of their means and station in life ordinarily use to guard their children from danger under the same or similar circumstances, to guard said child from said danger.

"And if the deceased child was exercising ordinary care according to his age, discretion and experience in life, and such care as boys of his age, discretion and experience ordinarily use under the same or similar circumstances at the time of his injury. Then plaintiff is

entitled to recover against the Laclede Gas Light Company.

"3. The court instructs the jury that if they find from the evidence that defendant, Laclede Gas Light Company, employed the Uffman Coal & Teaming Company to haul the iron pipe mentioned in the evidence as killing plaintiff's son, and place the same on Howard street, and if the jury find from the evidence that Uffman Coal & Teaming Company did haul said iron pipe and place it on Howard street in pursuance of said employment.

"And if the jury find from the evidence that the employees of said Uffman Coal & Teaming Company placed said iron pipe on an incline and uneven surface on Howard street, where it was liable to roll upon slight force or pressure, and did not block or fasten said pipe to prevent its rolling from the place where so placed; and if the jury find from the evidence that said servants of Uffman Coal & Teaming Company did not exercise ordinary care in so placing said pipe at said place and leaving it in said insecure condition.

"And if the jury find from the evidence that on the seventeenth day of July, 1903, the plaintiff's son, Francis Desmond O'Hara, was on said street near said iron pipe, and that whilst he was on said street, said iron pipe, by reason of its said insecure and unfastened condition on said street rolled from the place where so placed and killed plaintiff's said child:

"And if the jury find from the evidence that the parents of said child, plaintiff and her deceased husband, exercised ordinary care according to their station and circumstances in life, to guard said child from said danger;

"And if the jury find from the evidence that said deceased child was exercising ordinary care according to his age, discretion and experience, ordinarily used under the same or similar circumstances, then the plain-

tiff is entitled to recover and the verdict should be for the plaintiff.

"4. If the jury find for the plaintiff, they should assess her damages at such a sum as they believe from the evidence will be a fair pecuniary compensation to her for the loss of the services, care and support to her of her said son from the time of his death until he would have arrived at the age of twenty-one years."

The objections and criticisms to instructions numbers one and two are disposed of by what is said in the first paragraph of the opinion, as is also the objection to the third instruction, except the following:

"(c) Said instruction is further erroneous in that it allows a recovery without requiring a finding that the suit was brought in time. There was evidence tending to show that one suit was brought within a year and thereafter that a nonsuit was sustained in it and a second suit brought, but this instruction did not require a finding of these facts as a prerequisite to recovery.

"(b) Said instruction is further erroneous because it does not require a finding that plaintiff's son was an unmarried minor.

"(e) Said instruction is erroneous because it does not require a finding that Howard street was a public street."

These objections are supercritical. Objections C and D are cured by the first instruction given for plaintiff. In regard to objection E, the evidence of both parties shows that the street had a name (Howard) and that houses fronted on it and were numbered, and that defendant was having pipes laid underground in it. These facts clearly indicate that the street was a public street.

Instruction numbered 4, on the measure of damages, is erroneous. Plaintiff was not entitled to recover only on the theory of loss of the services of her child as a corollary to her obligation to support him. Her

right was to recover in tort and was the same right which the child would have had had he survived the injury. Her right, under the statute, is a transmissible one. [Hennessy v. Baravian Brewing Co., 145 Mo. l. c. 112, 46 S. W. 966, and cases cited; Sharp v. National Biscuit Co., 179 Mo. l. c. 559, 78 S. W. 787; Calcaterra v. Iovaldi, 100 S. W. l. c. 677.] The amount of damages should have been left to the sound discretion of the jury. The error was therefore prejudicial to plaintiff and furnishes no ground for complaint on the part of defendant.

Defendant's refused instructions C, D, E, F, G, H, and I, proceed upon the thory that defendant was not liable for the negligence of the Uffman Company or its agents and servants for the reason it was an independent contractor, and were properly refused.

4. Error is assigned in the refusal of the court to give the following instruction asked by defendant:

"A. The court instructs the jury that if you believe and find from the evidence that the pipe mentioned in the evidence started to roll, not because it had been left on the street mentioned in the evidence without sufficient blocking, but because of interference therewith by children in the neighborhood, then and in that case, the plaintiff is not entitled to recover and your verdict must be for the defendant."

The evidence shows that children in the neighborhood where the pipe was laid were in the habit of playing on the streets and sidewalks in the evening, and it further shows they were playing on and about the pipe when it was put in motion; and also shows that the ground where the pipe was laid was so slanting that the least force would put it in motion, in fact, defendant's evidence tends to show that it would not remain stationary without blocking. Thus it appears that the pipe left in the street without blocking was not only extremely dangerous but was indeed a death trap for

children playing upon the street. Wharton says: "So with regard to leaving a dangerous instrument on the highway. It is negligence to leave such an instrument on a place of public access, where persons are expected to be constantly passing and repassing, and where such persons are not required to be on their guard, or where children are accustomed to play." [Wharton on Neg., sec. 112.]

In Dwyer v. Missouri Pacific Ry., 12 Mo. App. 597, it is said: "In an action by a parent for the death of his child, evidence that the defendant erected upon uninclosed ground near its track a low trestle, to which children habitually resorted to play, and placed thereon irons in such a manner that the weight of a child would unset them and that a child threw off one of these irons and was killed by its fall, is competent as tending to show culpable negligence of the defendant. It is immaterial whether the defendant had actual knowledge that children resorted to the trestle in numbers to play thereon; it was bound to take notice of the habits of children, the character of the place, and the natural consequence of so placing the irons."

And in Nagel v. Railway, 75 Mo. 653 (a turntable case), the court at page 661, said: "If defendant was negligent in not securing the turntable, so that it could not be revolved by children, to their injury, the mere fact that it was revolved by other children who were playing upon it at the time the child was injured, will not excuse defendant, if such act ought to have been foreseen or anticipated by it. That it ought to have been foreseen and provided against is shown by the case of Koons v. Railroad Co., 65 Mo. 592." The case of Nagel v. Railroad, supra, is approvingly cited in Newcomb v. Railway, 169 Mo. l. c. 428, 69 S. W. 348; Kelley v. Parker-Washington Co., 107 Mo. App. l. c. 494, 81 S. W. 631, and Houck v. Railroad, 116 Mo. App. l. c. 568, 92 S. W. 738. That the case at bar comes

within this doctrine, there can be no doubt and we think the court was clearly right in refusing the instruction.

No reversible error appearing, the judgment is affirmed. *Goode, J.*, dissents.

### CONCURRING OPINION.

NORTONI, J.—I have found it quite difficult **to** determine the question of defendant's liability and **have** therefore examined a great many authorities, both American and English. The case presented is somewhat out of the ordinary. It is not the usual case in which the defense of independent contractor is interposed. If it were, I would not hesitate to say the defendant gas company should not be held to respond. And this, for the reason the injury was occasioned by the neglect of the teaming company to block or stay the iron pipe; the act being one over which the defendant had no authority. Nor was the failure to block or stay the pipe from rolling an act called for or contemplated by the contract. That is to say, no stipulation in the contract provided for performing the labor in a manner which contemplated the teaming company should not exercise reasonable care. On the contrary, the converse of this proposition is true; for the teaming company having contracted to haul and deposit the pipe, the law affixed upon it the obligation to exercise ordinary care in that behalf; and for a breach of this obligation, which occasioned the present defendant to respond in damages, the teaming company would no doubt be called upon as the primary party to recompense the gas company, under the doctrine of liability over. [Robbins v. Chicago, 71 U. S. 657; Independence v. Slack, 134 Mo. 66, 34 S. W. 1094; St. Joseph v. Railroad Co., 116 Mo. 636, 22 S. W. 794; Wiggins v. St. Louis, 135 Mo. 558, 37 S. W. 528.] The question of liability over

131 App.—29

is entirely immaterial here, however, and is referred to incidentally only as illustrative of the doctrines and their influence upon the ultimate rights of the parties arising in virtue of the respective breaches of the duty to exercise ordinary care.   There is an element in the case, however, arising from the use of a public street under defendant's direction, which, in my opinion, affixes liability upon the defendant gas company, for the reason it could not delegate its duty to the teaming company with respect to safeguarding the dangers in connection with the occupancy thereof, and thus acquit itself of responsibility for the negligent use of the thoroughfare.

In other words, I am willing to concede that had the defendant gas company employed the teaming company as independent contractor to deposit the pipe in question on  private  property instead of in a public street, and the teaming company had unloaded it   on the slope of a hill on a private lot, as it did on the slope of a hill in Howard street, without blocking or otherwise staying it from rolling, and the plaintiff's little boy, while crossing the private lot, was killed by reason of the pipe rolling down the slope of the hill upon him, there could be no recovery against the defendant gas company.   This, for the reason the neglect or failure to block the pipe and prevent it from rolling was the negligent act of the teaming company and not the gas company; and the injury occurred under circumstances where no special duty devolved upon the gas company to do more than exercise ordinary care, which it did, in employing a reasonably competent   contractor   to haul and deliver the pipe.   In those circumstances, the teaming company alone could be called upon to answer. This doctrine does not obtain, however, in the case presented by the record, for here the gas company was operating under a license from the city and occupied the public street for its private purpose.   It is familiar law

that the city must exercise ordinary care to the end that its street shall be reasonably safe for public use. [Russell v. City of Columbia, 74 Mo. 480.] And it is certain the duty of one occupying a street as a licensee of the city is none the less. Now in the case at bar, it appears from the contract in evidence that the defendant gas company required the teaming company to "distribute such pipe along the streets as required by the second party;" that is, as required by the gas company. Therefore, in contemplation of law, the gas company required or directed the teaming company to deposit this large iron pipe, twenty-five feet in length, two feet in diameter, and weighing about twenty-five hundred pounds, on the north side of Howard street where the slope of the hill was some two and one-half feet from the north edge to the center of the street. That is to say, in contemplation of law, the gas company having selected the place in the street for depositing the pipe, it is charged with knowledge that the pipe was placed on the incline in a position permitting it to roll towards the center of the street. It knew also the size and weight of the pipe and the probability of children playing thereabout which would likely cause it to roll across the street. To have exercised ordinary care looking to the safety of those members of the general public who occupied the street, the pipe should have been blocked or otherwise reasonably secured from rolling down the incline and upon one who chanced to pass along the way. It is true the servants of the teaming company neglected to block or secure the pipe from rolling. However this may be, their neglect in the circumstances of this case was equally the neglect of the defendant gas company for the law devolved upon it the duty, when occupying the street under the license, to see that proper precautions were taken for the safety of the pedestrian and others rightfully there. And this was a personal duty, the observance of which rested upon the defendant gas com-

pany. Its performance could not be shifted to an independent contractor so as to relieve the defendant. Where the public way, under a license, express or implied, is occupied for private use, it devolves upon the employer as a personal duty to see that it is maintained reasonably safe while the work is progressing, and for any breach of ordinary care with respect to this obligation, he must respond even though the breach were committed by an independent contractor. The following authorities are in point: Holliday v. Natl. Tel. Co., 2 Q. B. Law (1899) 392; Babbage v. Powers, 130 N. Y. 281; Pickard v. Smith, 10 C. B. Rep. 468; Benjamin v. Met. Street Ry. Co., 133 Mo. 274, 34 S. W. 590; Water Co. v. Ware, 83 U. S. 566; Colgrove v. Smith, 102 Calif. 220; Bohrer v. Deinhart, 45 N. E. (Ind. Ct. App.) 668; Wilson Bros. v. White, 71 Ga. 506; Railroad Co. v. Morey, 47 Ohio St. 207; McCamus v. Citizens Gas Light Co., 40 Barb. (N. Y.) 380. 1 Thompson, Com. on Negligence, secs. 665, 666; White's Supp. to Thompson's Com. on Negligence, sec. 652; 16 Amer. & Eng. Ency. Law (2 Ed.), 197.

I fully recognize that the work of hauling and depositing the pipes in the street was not intrinsically dangerous, and I am aware, too, that such a reasonable use of the street, under license, by the gas company, did not constitute a nuisance *per se*. [Gerdes v. Christopher, etc., Iron & Fdry. Co., 124 Mo. 347, 25 S. W. 557; Woodman v. Met. Ry. Co., 149 Mass. 335.] Intrinsic danger and nuisance are not considered by me as elements of liability in this case. I rest the matter entirely upon the proposition that defendant's occupancy of the public street under its license in that behalf, imposed upon it a personal obligation, the performance of which could not be delegated to an independent contractor, to see that due care was exercised in securing the pipe lodged on the hillside, to the end that it could not roll and inflict injury upon the little boy or others passing,

as they had a right to pass, on the thoroughfare. In this view, the defendant's liability should be affirmed irrespective of all questions of independent contractor.

I concur with Judge BLAND in affirming the judgment.

DISSENTING OPINION.

GOODE, J.—I am unable to assent to the result of this case for reasons touching both the facts and the law. The action was brought, as the allegations of the petition show, on the theory the pipes in the street would be attractive to children and hence it was the duty of defendants to take precautions against their being started in motion by children and causing an accident. This action was originally instituted not only against the Laclede Gas Light Company, but also the Uffman Coal & Teaming Company, which hauled said pipes, and the Abbott-Gamble Contracting Company, which was to lay the pipes in the ditch. The case was dismissed as to all defendants but the gas light company. There can be no doubt on the evidence, as the main opinion states, that the pipe which rolled over plaintiff's son was set in motion by boys who had been playing on it. The facts are the pipe was laid in the street at about five o'clock in the afternoon and remained securely there until about eight-thirty, when it started to roll and caught the deceased. The length of time the pipe remained in position demonstrated it was securely laid, and no carelessness can be predicated in regard to the manner in which it was laid unless the defendant was bound to anticipate children would play about it and guard against an injury to them. In my opinion this is invoking the doctrine of the turntable cases and applying it to an instance to which it has no application. There was nothing about these pipes in the street so attractive to children or so dangerous to

them if attracted, as to impose on defendant the duty of taking precautions with especial reference to accidents to children. Children will romp occasionally about any appliance, tool or device they have access to; but only those which are apt to entice them into danger impose on the owner the duty of guarding against their intrusion. In fact the turntable cases are anomalous and it is the practice of the courts to carry their doctrine no further than the previous decisions compel. This matter was considered in Witte v. Stifel, 126 Mo. 295, and Barney v. Railroad, 126 Mo. 372. The present case is not a case for the application of that rule, and the duty of defendant extended only to laying the pipes in such a manner as not to unnecessarily impede travel or endanger persons using the street for ordinary purposes. They were not bound to take measures to make the pipes so secure that boys could not start them in motion by getting on them. In the instructions for plaintiff the court made this an element of liability and in so doing erred, in my judgment.

The facts seem to me clearly to make a case in which the gas company might entrust the duty of laying the pipes to the Uffman Teaming Company as an independent contractor. Laying mains in a street is not a dangerous work or one which threatens injury to others; and I can conceive of no task which a party authorized to use the street may entrust to an independent contractor, if this is not one. The work to be done required no special precautions to prevent it from making the streets dangerous for travel and transportation. If there was any negligence whatever in failing to block the particular pipe, it was negligence in the manner of doing the task and not in the task itself; hence the gas company was not responsible if it engaged a competent contractor. On most streets where pipes were to be laid, no blocking would be required to prevent the pipes from rolling; and it seems extreme to say

that because there might be a slope somewhere the gas company, as the party authorized to use the streets, was bound to see the pipes were blocked in such portions of the streets and could not entrust so simple a precaution to the teaming company. The principle laid down in Robbins v. Chicago, 71 U. S. 679, ought to control the decision of this case, and I do not think any of the authorities cited in either opinion warrant holding this defendant liable. On the contrary, if those authorities are carefully studied and their reasoning noted, they justify treating the cause as one in which the gas company should be exonerated on the ground it had let the work to an independent contractor and might lawfully do so. The reasoning of the opinion in Loth v. Theatre Co., 197 Mo. 328, 94 S. W. 847, is particularly applicable. I deem the decision in this case opposed to the decisions cited supra from the Supreme Court and to City of Independence v. Slack, 134 Mo. 66, and ask that this case be certified to the Supreme Court for final determination.